Maria Luisa SALINAS

v.

**FORT WORTH CAB & BAGGAGE COMPANY, INC., d/b/a Yellow-Checker Cab.**

No. C–5724.

Supreme Court of Texas.

Feb. 25, 1987.

Rehearing Denied April 1, 1987.

Broadus A. Spivey, Paul E. Knisely & Dicky Grigg, Spivey, Grigg, Kelly & Knisely, Austin, Joe Prestia, Pena, McDonald, Prestia & Ibanez, Edinburg, David L. Ev-ans, Hooper & Evans, Fort Worth, for appellant.

Royal H. Brin, Jr., Strasburger & Price, Dallas, for appellee.

## OPINION

GONZALEZ, Justice.

Maria Salinas was raped and sodomized by a driver for the Fort Worth Cab & Baggage Co., Inc. Thereafter, she filed suit on behalf of herself and her two minor children. After the jury verdict, the trial court rendered judgment for Salinas against the Cab Co. In an unpublished opinion, the court of appeals reversed the judgment of the trial court on the basis of no evidence of an element of damages, and in the interest of justice remanded the cause to the trial court for a new trial. We reverse the judgment of the court of appeals and remand the cause to that court for consideration of the Cab Co.'s point of error that the actual and exemplary damages were excessive. In all other respects, we affirm the judgment of the trial court.

Shortly before 6:00 a.m. on September 23, 1980, Maria and her two daughters, Virginia, age three years and Claudia, age three months, arrived at a Fort Worth bus station. Maria was trying to locate her husband who had earlier left South Texas in search of work. Maria hailed a Yellow-Checker Cab which was being driven by Robert Jenkins, and asked to be taken to an address where she thought her husband was living with relatives. When she reached that address, Maria was informed that her husband had left Fort Worth to return to McAllen, so she got back into the cab with her children and asked Jenkins to return them to the bus station. Instead, Jenkins drove them to a deserted area and parked the cab. Jenkins pointed a pistol at Maria and threatened to kill her and her daughters if she did not obey him. Jenkins climbed into the back seat of the cab and threw the three month old child in the front seat. Jenkins then pointed the pistol at one of the children and told Maria to take off all of her clothes. After she had done so, Jenkins raped Maria and forced her to commit oral sodomy. Jenkins then robbed Ma-

ria of all her money and released them in another part of town. Maria reported the incident to the authorities and Jenkins was arrested later that day. Maria testified in Jenkins' trial and he was convicted of aggravated rape, sentenced to 99 years in prison and assessed a $5,000 fine.

Jenkins' criminal record reveals he had been arrested for theft in 1964, convicted of forgery in 1964, convicted of robbery in 1967, convicted of theft in 1968, convicted of theft by check in 1970, and again convicted of robbery in 1971. In April 1980 Jenkins was indicted for attempted murder after he assaulted a woman with a hammer. In August 1980, while he was still under indictment, Jenkins was hired by the Cab Co.

The cause of action against the Cab Co. was based on the Cab Co.'s alleged negligence and gross negligence in hiring Jenkins. Maria and the children sought damages for shame, embarrassment, humiliation, physical pain and mental anguish. They also sought damages for injury to their relationship with the husband/father, and for loss of companionship, affection, love, society and consortium on the basis that their husband/father subsequently abandoned them because of this incident.

The Cab Co. answered with a general denial, pleaded that Jenkins was not an employee but an independent contractor, and denied it knew or should have known of Jenkins' criminal record. The Cab Co. made no independent inquiry whatsoever

as to Jenkins' background and testified that it believed that the Fort Worth Police Department, which was in charge of taxi driver licensing in 1980, would not issue a taxi permit to anyone not qualified. A Fort Worth police officer testified that the City never refused to issue anyone a taxi permit. However, it would have informed the Cab Co. if an applicant had any convictions on his record. The Cab Co. denied that it was called by the City.

Thomas Loveless, Director of Public Transportation for the State of Maryland, testified without objection that as a common carrier, the Cab Co. must exercise a high degree of care to protect its passengers; the Cab Co.'s conduct showed a reckless disregard for the rights and safety of the public; and if the Cab Co. had acted prudently, this incident would have been prevented.

The jury found the Cab Co. failed to exercise a high degree of care and was grossly negligent in allowing Jenkins to operate one of its cabs. The jury awarded Maria $2,000,000 in actual damages and $500,000 in punitive damages, and Virginia and Claudia $750,000 each in actual damages and $500,000 each in punitive damages. The trial court later remitted $300,-000 of Claudia's actual damages.

Salinas contends that the court of appeals erred in holding that there is no evidence regarding Maria's and the children's impairment of their relationship with the husband/father.[1] Testimony regarding im-

1. ISSUE NO. 3:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Maria Salinas for her damages, if any, resulting from the event in question?

In answering this Issue, you may consider the following elements of damages, past and future, if any, and none other:
a. Physical pain;
b. Mental anguish and emotional distress;
c. Shame, embarrassment and humiliation;
d. The impairment of her relationship with her children; and
e. The impairment of her relationship with her husband and the loss of love, society, affection and companionship with him.

Answer in dollars and cents, if any.
ANSWER: $2,000,000.00

Do not include in your answer to this Issue any amount for a subsection of this Issue that you have included in any other subsection of this Issue or any subsection of Special Issues Nos. 4 or 6.

ISSUE NO. 4:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, would fairly and reasonably compensate the minor children of Maria Salinas for their damages, if any, resulting from the event in question.

In answering this Issue, you may consider as to each child the following elements of damages, past and future, if any, and none other:
a. Mental anguish and emotional distress;
b. Shame, embarrassment and humiliation;
c. The impairment of her relationship with her mother; and

pairment of the familial relationships was elicited from Dr. Jerome Brown, a psychologist, Lucia Cortina, Mrs. Salinas' mother, and Charles Roach, the Assistant District Attorney who prosecuted Jenkins.

Dr. Brown testified about Maria's prior marital relationship and the effect this incident had on her marriage. Dr. Brown related in some detail that Maria came from a traditional family in Mexico with a conservative religious background. He testified that: Maria's husband was the only man with whom she had ever had sexual relations; prior to this incident they had a normal, stable family life; as a result of the rape, Maria suffered post-traumatic stress disorder causing her to have frequent sleep disturbance, nightmares, depression, obsessive rumination about the rape, exhibited regressive behavior; and that the marriage relationship suffered because of this incident. Dr. Brown stated that although Maria's husband was supportive at first, he did not seem to be emotionally equipped to handle the stress from problems that emerged over a long period of time. Dr. Brown testified further that the relationship deteriorated after Maria was forced in the criminal trial to reveal that oral sodomy had occurred, of which up to that time, her husband had been unaware and which was not acceptable in her culture. Dr. Brown also testified that Virginia and Claudia continue to have unresolved problems with their father's abandonment of them and believe it is due to the rape.

Mr. Roach testified as to Mr. Salinas' violent reaction during the criminal trial when Maria first testified as to the oral sodomy. Maria's mother, Lucia Cortina, testified as to the effect the rape had on Maria's relationship with her husband. Eventually, Mr. Salinas left his wife and children and contacted them only two or three times over the next few years. Mrs. Cortina testified that Mr. Salinas turned his back on Maria and his children because of the rape and "the children were very sad about these things."

■ This testimony constitutes some evidence that the incident was a proximate cause of impairment of the familial relationships in question. We hold that the court of appeals erred when it held that there was no evidence these damages resulted from the event in question.

### Cab Co.'s Application

In its application, the Cab Co. brings forth several points of error. The Cab Co. contends the court of appeals erred in remanding this cause rather than rendering judgment in its favor because there is no evidence of impairment of the familial relationships. In light of our holding that there is some evidence of impairment, there is no need to further discuss this matter. The Cab Co. also asserts that the court of appeals erred in failing to render judgment in its favor because the record contains no evidence of negligence or violation of a duty toward plaintiffs, and no evidence that its conduct was a proximate cause of the occurrence in question.

■ As a prerequisite to a "no evidence" point of error on appeal, the appellant must have presented the no evidence contention to the trial court in at least one of the following ways:

(1) By motion for instructed verdict;
(2) By objection to submission of the special issue;
(3) By motion for judgment notwithstanding the verdict;
(4) By motion to disregard the contested jury finding(s); or
(5) By motion for new trial.

*Aero-Energy, Inc. v. Circle C. Drilling Co.,* 699 S.W.2d 821, 822 (Tex.1985). In the present case, the Cab Co. made no motion for instructed verdict, no motion for judg-

---

d. The impairment of her relationship with her father and the loss of love, society, affection and companionship with him.
Answer in dollars and cents, if any.
ANSWER: 1) Virginia Salinas $750,000
ANSWER: 2) Claudia Salinas $750,000

Do not include in your answer to this Issue any amount for a subsection of this Issue that you have included in any other subsection of this Issue or any subsection of Special Issues No. 3 or 6.

ment notwithstanding the verdict, and no motion to disregard any of the jury's answers. Moreover, the Cab Co. did not object to the submission of the negligence or proximate cause issues on "no evidence" grounds, nor was such included in its motion for new trial. Although the Cab Co. objected to these issues on other grounds, it did not preserve a "no evidence" point of error. We stated in *Aero-Energy:*

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Tex.R.Civ.P. 274. We hold that the objection to [the issue] was not sufficient to preserve a no evidence point because the objection did not distinctly point out that ground.

699 S.W.2d at 822. The court of appeals correctly held that the Cab Co. failed to preserve error on these points.

 The Cab Co. also contends the court of appeals erred in failing to render judgment for it because of the absence of any finding of failure to use ordinary care. The Cab Co. contends the trial court erred in submitting an issue concerning a high degree of care rather than ordinary care in the selection of its cab drivers.[2] The Cab Co. did not object to the "high degree of care" standard as submitted, nor to the definition in the court's instructions to the jury, nor did it request a different standard of care. Although the Cab Co. objected to the submission of this issue as being global, and on the basis of no evidence, no objection was made distinctly pointing out error on the ground of degree of care. An objection which states that an issue is global is insufficient. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 938 (Tex.1980). Since this alleged error was waived by the Cab Co. we need not reach this issue.

 The Cab Co. further asserts this cause should be remanded to the court of appeals for consideration of factual insuffi-

ciency points not considered by the court of appeals. The only point of error preserved which the court of appeals did not rule on is the Cab Co.'s point alleging that the actual and exemplary damages were excessive. Tex.R.Civ.P. 324(b)(2). This is a question of fact over which this court has no jurisdiction. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Thus, this cause is remanded to the court of appeals for consideration of this point. In all other respects, the judgment of the trial court is affirmed.

---

2. ISSUE NO. 1:

Do you find from a preponderance of the evidence that Defendant, Fort Worth Cab & Baggage Co., failed to use a high degree of care in allowing R.L. Jenkins to operate its taxi cab?

Answer "It did fail" or "It did not fail"
ANSWER: It did fail
Issue No. 2 found that this failure was a proximate cause of the event in question.