Lester **VAUGHN, Keith J. Nichols, Individually and d/b/a K-Jacs, and Ernest Rosenovac, Individually and d/b/a K-Jacs, Appellants,**

v.

**William David REAGAN and Tressa Arnet a/n/f of Julia Reagan, Appellees.**

No. C14-88-00369-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 7, 1989.

Rehearing Denied Jan. 11, 1990.

John P. Venzke, Houston, for appellants.

William F. Hagans, Houston, for appellees.

Before ROBERTSON, CANNON and ELLIS, JJ.

OPINION

CANNON, Justice.

This is an appeal regarding a personal injury lawsuit. In June of 1980, William David Reagan was injured by Lester Vaughn, the manager of a Pasadena bar.

Vaughn was attempting to break up a fight involving Reagan when he hit Reagan in the head with a baseball bat. Reagan suffered a severe brain injury and now functions at the level of a six- or seven-year-old child. Reagan and his minor daughter Julia sued Vaughn and Keith Nichols and Ernest Rosenovac, the owners of the bar. A jury found Vaughn, Nichols and Rosenovac 60% negligent and Reagan 40% negligent. The jury awarded damages in the amount of $2,432,000 to Reagan and $405,000 to Julia, and the trial court entered judgment for them. Vaughn, Nichols and Rosenovac appeal that judgment with twelve points of error. We find error in the award of damages to Julia Reagan, and we modify the judgment to delete those damages. We affirm the judgment as modified.

Points of error one through five complain of jury Questions 1 and 3 and are argued together. Those questions, as well as Question 2, read as follows:

## QUESTION 1

Was the negligence, if any, of the Defendants a proximate cause of the injuries to David Reagan?

Answer "Yes" or "No" separately as to each.

| | |
|---|---|
| A. Lester Vaughn | Yes |
| B. Ernest Rozenovak | Yes |
| C. Keith J. Nichols | Yes |

## QUESTION 2

Was the negligence, if any, of David Reagan a proximate cause of the injuries to David Reagan?

Answer "Yes" or "No."

Answer: Yes

If you have answered "Yes" to any part of Question 1 and "Yes" to Question 2, then answer the following Question:

## QUESTION 3

What percentage of the negligence that caused, in whole or in part, David Reagan's injuries, if any, do you find from a preponderance of the evidence is attributable to each of the parties? Answer only as to the person whose negligence was found by you to have been a proximate cause of David Reagan's injuries, if any. Answer by stating the percentage, if any, opposite each name. The percentages you find must total 100%. The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

| | |
|---|---|
| A. Lester Vaughn | 20% |
| B. Keith J. Nichols, Individually and d/b/a K–Jacs | 20% |
| C. Ernest Rozenovak, Individually and d/b/a K–Jacs | 20% |
| D. David Reagan | 40% |
| TOTAL: | 100% |

It is obvious that Keith Nichols and Ernest Rosenovac are identified differently in Questions 1 and 3 because in Question 3 their names are followed by the words "individually and d/b/a K–Jacs." Appellants maintain that as a result of the difference in wording, the trial court erred in entering judgment against them because 1) the jury's verdict did not contain all of the essential elements of recovery; 2) the verdict as a whole did not support the entry of judgment; 3) appellees failed to file a motion to disregard the jury's answers to Questions 3B and 3C; 4) there was no evidence to support the submission of Question 3B; and 5) there was no evidence to support the submission of Question 3C. The gist of appellants' argument is that the parties found to have been negligent in Questions 1B and 1C are not the same as the parties whose percentage of fault is inquired about in Questions 3B and 3C.

■ Appellants' contention fails for several reasons. In the first place, appellants bore the burden of obtaining a finding on the comparative negligence issue and, consequently, of submitting the issue in substantially correct form. *Estate of Clifton v. Southern Pac. Transp. Co.*, 709 S.W.2d 636, 638 (Tex.1986); *see also Johnson v. Swain*, 787 S.W.2d 36, 37 (Tex.1989). Furthermore, appellants waived their argument by failing to object to the form of the question prior to its submission to the jury. TEX.R.CIV.P. 274.

■ More importantly, however, appellants fail to articulate any *material* difference in the questions. In their answer and

general denial, Nichols and Rosenovac styled themselves as Keith J. Nichols, Individually and d/b/a K–Jacs, and Ernest Rosenovac, Individually and d/b/a K–Jacs. Stipulations made before trial referred to the parties in the same manner. Appellants also never raised any issue about the capacity in which they were sued. Finally, Question 3 was predicated on an affirmative answer to any part of Question 1 and stated the following: "Answer only as to the person whose negligence was found by you to have been a proximate cause of David Reagan's injuries, if any." We do not think the jury was confused as to the parties, and we overrule points of error one, two and three.

In points of error four and five, appellants complain there was no evidence to support the submission of Questions 3B and 3C; however, they do not address these points in their argument. Since appellants do not attack the sufficiency of the evidence regarding Questions 1 and 2, we assume they mean only that there was no evidence to support the submission of Questions 3B and 3C in the form to which appellants are now objecting. Given that we find no material difference in the questions, if there was evidence to support the submission of Questions 1 and 2, then the same was true of Question 3. Moreover, one need only look at the pleadings and stipulations to see that the form of Questions 3B and 3C was correct. Points of error four and five are overruled.

■ In answer to Questions 5C, 5D and 5E, the jury awarded damages to David Reagan's daughter Julia for loss of parental care, nurture and guidance and for past and future mental anguish. In points of error six through eleven, appellants argue that there was no evidence to support the submission of these questions and, further, that there was insufficient evidence to support the jury's answers. In point of error twelve, appellants assert the trial court erred in entering judgment for Julia Reagan because Texas does not recognize a cause of action in favor of a minor plaintiff for loss of parental consortium in a non-wrongful death case.

Three years ago this court (with one justice dissenting) declined to extend a right of recovery in these cases, stating that the decision to create a new cause of action was one for the legislature or the supreme court. *Hughes Drilling Fluids, Inc. v. Eubanks*, 729 S.W.2d 759, 762 (Tex.App.— Houston [14th Dist.] 1986), 742 S.W.2d 275 (Tex.1987) (writ granted, judgment set aside and cause remanded for consideration of parties' settlement agreement). Since then, however, neither the legislature nor the supreme court has addressed this issue directly, and the appellate courts continue to refuse to recognize such a cause of action. *Graham v. Ford Motor Co.*, 721 S.W.2d 554, 555 (Tex.App.—Tyler 1986, no writ); *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 878 (Tex.App.—Corpus Christi 1988, writ denied). The Fifth Circuit has considered the issue as well and, "[a]fter wading through the uncertain thicket of present-day Texas tort law," concluded that no such cause of action exists. *In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985*, 856 F.2d 28, 29 (5th Cir.1988).

In support of the judgment, appellees argue that Texas law already provides for loss of parental consortium. They point out that at least one appellate court has held that damages to the filial relationship are compensable. *Hall v. Birchfield*, 718 S.W.2d 313, 338 (Tex.App.—Texarkana 1986), *rev'd on other grounds*, 747 S.W.2d 361 (Tex.1987). Appellees also cite several supreme court decisions as standing for the principle that the nuclear family is worthy of protection in circumstances of either death or injury. *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex.1978); *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985); *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630 (Tex.1986). In addition, appellees refer us to *Salinas v. Fort Worth Cab & Baggage Co.* and argue that in that case the supreme court appeared to recognize the right to recover for impairment of familial relationships. 725 S.W.2d 701, 704 (Tex.1987) (minor children allowed to recover for impairment of relationship with father who abandoned them after

mother was raped). Finally, appellees argue that the force of logic in cases from other states supports the trial court's judgment and that it would be unconstitutional under the open courts provision to limit recovery of parent-child consortium to death cases.

In *Bennight v. Western Auto Supply Co.*, both the husband and daughter of the injured party sought compensation for loss of consortium. 670 S.W.2d 373 (Tex.App. —Austin 1984, writ ref'd n.r.e.). The Austin Court of Appeals held that a cause of action for loss of parental consortium was not allowed under the laws of this state and that it was not the role of an intermediate appellate court to create a new cause of action. *Id.* at 379–80. However, the court also stated, "It is difficult 'on the basis of natural justice to reach the conclusion that this type of action will not lie.' *Hill v. Sibley Memorial Hospital*, 108 F.Supp. 739 (D.D.C.1952)." *Id.* at 379. The court noted the "obvious reality" of such injuries to the child when the parent suffers injuries of the kind sustained in *Bennight*. The court also noted the incongruity of allowing certain family members, but not others, to recover for substantially the same harm suffered by each. *Id.*

It is difficult to dispute that reasoning. The evidence in this case certainly supports Julia Reagan's loss. Dr. Ralph Mancini, a specialist in physical medicine and rehabilitation who examined David Reagan, testified that Reagan suffers from a permanent disability that will not improve substantially. In terms of requiring supervision and making judgments, he is like a child of five or six. Aside from dressing, feeding, walking and watching television, he is dependent on other people. He has severe problems in the areas of memory, problem-solving and abstract thinking.

Appellants assert that there was minimal evidence introduced at trial regarding the relationship between Julia and her father. We find otherwise. Neither Julia nor David Reagan testified, but two of his sisters did. Basically, their testimony was that Reagan married at seventeen and became a father while still very young. His sister Donita stated that he was a very affectionate father, and his sister Dale testified that he and Julia had a very close relationship. Dale thought Reagan was a remarkable father considering his youth. Reagan served in the army for several years. When he left the service, he could not find a job, so his wife Tressa worked and he babysat. Dale testified that Reagan had Julia constantly and took her everywhere with him. Tressa later filed for a divorce, which Reagan did not want because he would not be with Julia as much. However, he continued to babysit while Tressa worked.

In March of 1980, Reagan arrived in Texas from Indiana to spend some time with Donita. He talked to Julia on the phone, and the week that he was hurt, told her he was returning to Indiana because he missed her so much. Reagan was injured in June and remained in Texas until he could be taken to his parents' home in Indiana. Soon after his return, Tressa and Julia moved without telling Reagan their destination. Dale testified that Reagan would start thinking about Julia at night when things got quiet and would cry. Dale located Tressa and Julia in Florida, and Reagan wrote and called his daughter. However, on Julia's birthday, Reagan's mother called her so that he could talk to her and was told by her stepfather never to call again. Reagan then did not see or talk to Julia until she moved back to Indiana several years later, but he bought her birthday and Christmas presents and kept them for her.

As for their present relationship, Dale testified that Julia lives about thirty miles from her father and sees him when she spends time with her aunt. They watch television together, and he asks her about school and her activities. Dale also stated that she knows from conversations with Julia's mother that Julia is embarrassed by her father's condition. Julia is now about thirteen. Obviously, given his disabilities, Reagan can provide her with very little "care, nurture and guidance."

However, despite the evidence and the arguments for or against a right of recov-

ery for loss of parental consortium, the issue remains whether, absent a clear-cut supreme court or legislative mandate, this court can recognize such a cause of action. In that regard, we do not interpret the cases cited by appellees as providing us with a clear-cut mandate. As we have not changed our mind on the role of the appellate court since our decision in the *Eubanks* case, we continue to adhere to the present law. Perhaps the dissent in this case will provide the supreme court with an opportunity to review the issue.

Appellees also argue that appellants have waived any objection to the mental anguish damages because their point of error twelve asserting no cause of action addresses only loss of parental consortium. However, appellees also make the following statement: "Because Appellants did not raise a point of error on whether there is a cause of action in Texas for mental anguish, *despite the fact that they discussed this issue in their brief,* the point of error is waived." (emphasis added). Even if technical rules of briefing are not complied with, the appellate court will pass on both the sufficiency and merits of the point in light of statement and arguments thereunder. *3–C Oil Co. v. Modesta Partnership,* 668 S.W.2d 741, 754 (Tex.App.—Austin 1984, writ ref'd n.r.e.). The statement and arguments in support of point of error twelve, as well as appellants' objections to Question 5C, 5D and 5E at trial, make clear that appellants are contesting the award of mental anguish damages, and we find that they have not waived their objections. Points of error six through eleven are overruled. Point of error twelve is sustained.

We affirm the judgment of the trial court with the modification regarding the award of damages to Julia Reagan.

ELLIS, Justice, dissenting.

I respectfully dissent from the majority's opinion regarding the award of damages to Julia Reagan. I think that Texas law should recognize a minor child's claim for loss of parental consortium when the parent is negligently injured by a third party.

While the supreme court has not expressly extended recovery in such cases, its decisions in *Salinas v. Fort Worth Cab & Baggage Co.,* 725 S.W.2d 701 (Tex.1987) and *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361 (Tex.1987) suggest that it is close to doing so. In *Sanchez v. Schindler,* the court stated, "This court has recognized previously that injuries to the familial relationship are significant injuries and are worthy of compensation." 651 S.W.2d 249, 252 (Tex.1983). The court was referring to its decision in *Whittlesey v. Miller* that either spouse has a cause of action for loss of consortium suffered as a result of an injury to the other spouse caused by a tortfeasor's negligence. 572 S.W.2d 665 (Tex.1978). The injury to Julia Reagan's relationship with her father is equally significant.

I also think this court has the authority to recognize such a claim. *See Poole v. El Chico Corp.,* 713 S.W.2d 955, 958 (Tex.App.—Houston [14th Dist.] 1986), *aff'd and remanded,* 732 S.W.2d 306 (Tex.1987). The evidence in this case supports the jury's award of damages to Julia Reagan, and I would affirm the entire judgment.