**Byron WILLIAMS, Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY and Greenville Steel Car Company, Appellees.**

**No. 01–88–00968–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 12, 1990.

Rehearing Overruled Jan. 24, 1991.

Jack Urquhart, Jack Carnegie, J. Greg Dow, Holtzman & Urquhart, Houston, for appellant.

W.T. Womble, W.T. Womble & Associates, JoAnn Storey, Davis & McFall, James D. Wise, Jr., James N. Isbell, Brown, Sims, Wise & White, Houston, for appellees.

Before DUGGAN, SAM BASS and HUGHES, JJ.

## ON MOTION FOR REHEARING

DUGGAN, Justice.

This is an appeal from a take-nothing judgment entered on a jury verdict in a personal injury case. We deny the motion for rehearing, withdraw our earlier opinion dated September 14, 1989, and issue this.

On June 22, 1981, appellant, Byron Williams, was unloading a railway hopper car filled with limestone for his employer, Radcliff Materials, Inc. ("Radcliff"). The hopper car overturned and fell on Williams and a co-worker, injuring Williams and killing the co-worker. Appellee Southern Pacific Transportation Company ("Southern Pacific") owned the hopper car, which appellee Greenville Steel Car Company ("Greenville") had manufactured.

Williams filed suit for damages against Southern Pacific and Greenville, alleging: (1) strict liability based on defective design, manufacture, and marketing of the hopper car; (2) negligence; and (3) gross negligence.

In answers to special issues, the jury found that: (1) Southern Pacific and Greenville were not negligent, and Williams was negligent (Special Issue No. 1); (2) the hopper car manufactured by Greenville, and supplied by Southern Pacific, was not defectively designed (Special Issue No. 4); (3) neither Southern Pacific nor Greenville knew or should have known that the hopper car would turn over while unloading (Special Issue No. 5); (6) Williams' injuries were caused by his own negligence (Special Issue No. 2); and (7) Williams was not entitled to damages for his injuries (Special Issue No. 11). The trial court entered judgment in favor of Southern Pacific and Greenville against Williams. Williams appeals, asserting eight points of error.

### Points of Error One, Two, Three, and Seven

In points of error one, two, three, and seven, Williams urges that the answers to certain special issues were established in his favor as a matter of law or, alternatively, that the jury's findings against him were against the great weight and preponderance of the evidence. Those issues inquired whether:

(1) the hopper car manufactured by Greenville and supplied by Southern Pacific was defectively designed (point of error one);

(2) Southern Pacific and Greenville either knew or should have known that the hopper car could turn over while unloading (point of error two);

(3) Southern Pacific and Greenville were negligent (point of error three); and

(4) Williams sustained damages (point of error seven).

In a jury trial, legal insufficiency points must be preserved through a motion for instructed verdict, a motion for a judgment notwithstanding the verdict, an objection to submission of an issue to the jury, a motion to disregard the jury's answer to a vital fact issue, or a motion for a new trial. *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701, 704 (Tex.1987). Williams preserved his "no evidence" points of error one, two, and three for appeal by his motion for a new trial. However, Williams did not utilize any of these measures to preserve the "no evidence" portion of his complaint as to the jury's finding of zero damages in Special Issue No. 11. Therefore, point of error seven will not be considered on appeal. *Id.*

Even if the "no evidence" portion of point of error seven were to be considered, Williams would not be entitled to a reversal. While he contends that the zero damage award "infers that they [the jury] entered a judgment rather than a verdict," and "may be cause for suspicion that the answer was induced by prejudice or by improper influence," quoting *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 374, 124 S.W.2d 334, 335 (Tex.Comm'n App.1939, opinion adopted), he concedes that "such conduct alone does not constitute reversible error." However, he argues that reversal is required when such conduct is taken in conjunction with the contested findings, erroneous as a matter of law and fact, that neither Southern Pacific nor Greenville was negligent. Williams is denied the benefit of this predicate because we decide these claims adversely to him in points of error two and three, which follow. *Johnson v. Whitehurst*, 652 S.W.2d 441, 449 (Tex.App.— Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■■■ When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex.App.— Houston [1st Dist.] 1987, no writ). In reviewing a legal sufficiency point relating to an issue on which the appellant had the burden of proof, this Court first examines the record for evidence that supports the jury finding, while ignoring all evidence to the contrary. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

Because points of error one, two, three, and seven, as well as two others of Williams' eight points, concern the legal and factual sufficiency of the evidence, we begin by reviewing such evidence. The testimony conflicted regarding whether the hopper car was defectively designed, whether Greenville (when it sold the hopper car) or Southern Pacific (when it supplied the car) knew or should have known that the hopper car could turn over while unloading, whether either Greenville or Southern Pacific was negligent, whether any such defective design or negligence was the producing cause of Williams' injuries, and whether Williams himself caused the accident. Employees of Southern Pacific, Greenville, and Radcliff, as well as outside consultants, testified in person and by deposition.

Prior to trial, the parties stipulated that a Class H–100–36 open top hopper car (no. 466439) overturned while being unloaded at Radcliff's facilities in June 1981. They also stipulated that a similar car overturned while being unloaded at Radcliff's facilities in May 1981. The testimony of Roland Townsend, Radcliff's general manager at the time of the accidents, indicated that Southern Pacific supplied the hopper cars to Radcliff after the two companies signed a contract in June 1980. The record does not show when Greenville sold hopper car no. 466439 to Southern Pacific.

Charles Day, Southern Pacific's division mechanical officer, testified that he investigated the hopper car that overturned in June 1981, and found nothing mechanically wrong with it. Based on his observation of hopper cars during his many years with the railroad, he also stated that there was nothing wrong with the design of the hopper car. Day concluded that uneven unloading caused the accident. He further stated that, in addition to the May and June 1981 incidents, he knew of two occurrences since 1975 when uneven loads caused cars to turn over. Day also testified that he did not know whether Southern Pacific warned users of hopper cars that the cars could turn over while unloading, but that he personally had cautioned some users that the cars could turn over if unloaded unevenly.

Kenneth Leaver, senior engineer-car for Southern Pacific, stated that the hopper car was designed properly and in accordance with the requirements of the Federal Railroad Administration ("FRA") and the Association of American Railroads ("AAR"). He also testified that Southern Pacific inspectors were present at the plant during construction of the hopper car, and reported that the car was designed according to the specifications. Southern Pacific set the

specifications in accordance with requirements of the FRA and AAR. Leaver commented that at least 1,000 hopper cars, identical to the one that overturned, had been built for Southern Pacific, and that he had heard of only two overturnings, both at Radcliff.

Greenville's chief engineer and only witness, Thomas Minshull, testified that Greenville had not performed any testing to determine the stability of the hopper car during unloading. He stated he believed that the design and manufacture of the hopper car did not cause the accident, because this was the first time that he had heard of such an occurrence. He noted that hopper cars were designed 50 years ago, and that the design had proven itself over the years to be satisfactory in hauling limestone. Minshull also testified he was unaware of any other situations in which a Greenville hopper car similar to the one involved in the June 1981 accident turned over while being unloaded.

Roland Townsend testified that, in his 40 years of experience in the industry, he had never heard of hopper cars turning over either at Radcliff or at any of its competitors. He stated that he had attended meetings of aggregate (limestone, gravel) trade associations and had never heard of an accident similar to those at Radcliff's facilities.

A consultant retained by Williams, Dr. David Peters, who had degrees in applied mechanics and aeronautical and astronautical engineering, testified that, in his opinion, an open top hopper car was defective in carrying limestone because in normal use it could fall over. He stated that the accident was caused by excessive limestone caking up on the side of the car, causing it to flip over. He concluded that one or more of several design changes, including a lock-type coupler, locking center pin, the addition of weight to the car, or safety chains linking the wheels to the car, would render the car impossible to flip over. Peters admitted that if there was absolutely no doubt that the first compartment of the hopper car was empty, it was completely safe to open the second compartment.

Bruce Flohr, who testified on behalf of Southern Pacific, was president of a company that rented railroad cars and owned and operated five railroads. He had previously been employed with Southern Pacific. Flohr had also served as number two man in the FRA for 18 months, and number one man thereafter for six months. He stated that he had worked with hopper cars since their introduction in the mid–1970s and used them in his current business. According to Flohr, the cars were neither defectively designed nor unreasonably dangerous. He testified that if the first compartment had been empty when the doors to the second compartment opened, the car would not have overturned. Flohr disagreed with Peters concerning design changes. In Flohr's opinion, based on his experience, the locking coupler, locking center pin, and chains would not have prevented the hopper car from flipping over. However, he conceded that he had performed no calculations to support his opinion. He also testified that rail cars needed to be free to move horizontally and vertically to match the terrain on which the tracks were located, and that a train could not run down a track with rigid connections between its cars. Flohr also stated that the shipper of the product was responsible for its loading, and the receiver for its unloading. According to Flohr, railroad employees did not perform loading and unloading. Flohr also testified that at the time he worked for Southern Pacific (1965–1975), Southern Pacific knew that hopper cars could turn over during the unloading process if a car had a load "hung up" on one side of the car.

Roland Townsend, William Mayfield, Talmadge Campbell, and Neal Bland, employees of Radcliff at the time of Williams' accident, testified that all Radcliff employees were given instructions concerning the unloading of hopper cars. Mayfield and Bland, in particular, recalled instructing Williams. According to the witnesses, those instructions dictated that one compartment of the two-compartment hopper car be completely emptied first. Again, according to the witnesses, employees were instructed that before they opened the

doors to the second compartment, they were to look in the first compartment to verify that all the material was out. However, Samuel Tyson, also an employee of Radcliff at the time of the accident, testified that Radcliff supervisors, on occasion, did instruct workers to open the second compartment before the first one had been emptied.

On direct examination, Williams stated that he had not received instructions on procedures from his supervisor on the day of the accident, but that his co-workers passed on the information to him. He testified that a vibrator was sometimes placed on the hopper car if material was not flowing out. He mentioned that, on the day of the accident, he saw one of his co-workers put a vibrator on the car before he, Williams, opened the door of the second compartment. However, he stated that material had stopped flowing from the first compartment, and that a co-worker had told him to open the second compartment.

On cross-examination, Williams acknowledged that Radcliff had instructed him how to unload the hopper cars safely. Williams agreed that he followed the procedure of opening one compartment at a time and making sure the first compartment was empty before opening the second. However, after refreshing his memory from his deposition, he stated that he had not checked the front compartment to see if it was empty before opening the back compartment. Instead, he testified that a co-worker directed him to open the second compartment and he assumed the co-worker had checked the first compartment. Williams insisted it was the co-worker's job to inspect the first compartment.

In his deposition, Williams stated that material was still coming out of the first compartment when he opened the door of the second compartment, and that he had not checked to see if the first compartment was empty.

The Texas Supreme Court has adopted the Restatement (Second) of Torts sec. 402A (1965) as the rule applicable to defective products that cause physical harm to persons. *Rourke v. Garza*, 530 S.W.2d 794, 798 (Tex.1975); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex. 1967). Under section 402A, a seller of a product in a defective condition unreasonably dangerous to the user is subject to liability for injuries caused to the user by the product, if the seller is engaged in the business of selling such a product and it reached the user without substantial change in the condition in which it was sold. *Rourke*, 530 S.W.2d at 798. Section 402A does not distinguish among manufacturing, design, or marketing defects. However, it is clearly applicable to design defect cases. *See Rourke*, 530 S.W.2d at 798; *Garcia v. Sky Climber, Inc.*, 470 S.W.2d 261, 268 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). The Texas Supreme Court has refined the definition of a "defectively designed product," by characterizing it as one "unreasonably dangerous ... taking into consideration the utility of the product and the risk involved in its use." *Acord v. General Motors Corp.*, 669 S.W.2d 111, 113 (Tex.1984), citing *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979).

Therefore, to prove that Greenville or Southern Pacific was liable for his injuries because of a defectively designed hopper car, Williams must establish that: (1) Greenville or Southern Pacific was engaged in the business of selling or leasing hopper cars; (2) the hopper car involved in the accident was defectively designed when sold; (3) the hopper car involved in the accident was unreasonably dangerous (weighing the risk and utility) to the user; (4) the hopper car reached the user without substantial change in the condition in which it was sold; and (5) the defective and unreasonably dangerous condition of the hopper car involved in the accident caused physical harm to the user. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375–76 (Tex.1978); *Rourke*, 530 S.W.2d at 798–800; *McKisson*, 416 S.W.2d at 788–90; *see Acord*, 669 S.W.2d at 113, 116.

The jury answered "No" to Special Issue No. 4, which inquired:

Do you find from a preponderance of the evidence that the hopper car manufac-

tured by Greenville Steel Car Company, and supplied by Southern Pacific Railroad Company was defectively designed and that such defective design was a producing cause of the Plaintiffs' injuries? You are instructed that for a product to be "defectively designed" Plaintiffs must prove by a preponderance of the evidence four elements: 1) a product is defective; 2) the defect rendered the product unreasonably dangerous; 3) the product reached the consumer without substantial change in its condition from the time of original sale; and, 4) the defective product was the producing cause of injury to the users.

The testimony of Day, Leaver, and Flohr supports the jury finding that the hopper car was not defectively designed. Because we accept the testimony that supports the jury finding and ignore all testimony to the contrary, we find the evidence legally sufficient to support the adverse fact finding on Williams' defective design theory. *Holley,* 629 S.W.2d at 696.

■ The elements of liability based on a defectively marketed product are substantially the same as those outlined for a defectively designed product. However, the defective or unreasonably dangerous condition of the marketed product arises not from the product itself, but because the seller fails to warn the user of an improper use of the product. *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602, 604–605 (Tex.1972). If a seller knows or should know of potential harm to a user because of the nature of the product, the seller is required to give an adequate warning. *Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978); *Crocker v. Winthrop Laboratories, Div. of Sterling Drug, Inc.,* 514 S.W.2d 429, 433 (Tex.1974); *Pearson v. Hevi–Duty Elec.,* 618 S.W.2d 784, 788 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Therefore, to establish liability on the part of Greenville or Southern Pacific for a defectively marketed hopper car, Williams must show that Greenville or Southern Pacific knew or should have known that the car had a defective or un-

reasonably dangerous condition that could cause it to overturn.

■ The jury answered "No" to Special Issue No. 5, which asked:

Do you find from a preponderance of the evidence that Greenville Steel Car Company or Southern Pacific Railroad either knew or should have known at the time that Greenville sold the hopper car and/or Southern Pacific provided the hopper, that it could turn over while unloading.

The testimony of Leaver, Minshull, and Townsend supports the jury finding that neither Greenville nor Southern Pacific knew or should have known of the hopper car's propensity to turn over if unloaded unevenly. Because we accept the testimony that supports the jury finding and ignore all testimony to the contrary, we find the evidence legally sufficient to support the adverse fact finding on Williams' defective marketing theory. *Holley,* 629 S.W.2d at 696.

To sustain a negligence cause of action against Greenville, Williams must establish that: (1) Greenville owed a duty to him; (2) Greenville breached that duty; (3) he was injured; and (4) Greenville's breach of duty was a proximate cause of his injuries. *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984); *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871–72 (Tex.1978). A similar analysis must be applied to determine if Southern Pacific was negligent with respect to Williams. *See Kansas City S. R.R. v. Guillory,* 376 S.W.2d 72, 75–76 (Tex.Civ.App.—Beaumont 1964, writ ref'd n.r.e.).

Special Issue No. 1 read as follows:

Do you find from a preponderance of the evidence that any of the following parties was negligent and that such negligence was a proximate cause of the Plaintiffs' injuries?

The jury found that Greenville and Southern Pacific were not negligent, but that Williams was.

We find that the testimony of Day, Leaver, Minshull, and Flohr, referred to above, provides legally sufficient evidence to sup-

port the jury finding that neither Greenville nor Southern Pacific was negligent.

■ In reviewing all questions of "factual sufficiency," regardless of who had the burden of proof, we must consider and weigh all the evidence, both in support of and contrary to the challenged finding. The finding must be upheld unless we find that it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different fact conclusion. *Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 796 (1951). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

From a review of the testimony of Day, Leaver, Minshull, Peters, Flohr, Townsend, Mayfield, Campbell, Bland, Tyson, and Williams, referred to above, we conclude that the jury findings, that the hopper car was neither a defectively designed nor marketed product, were not against the great weight and preponderance of the evidence. Based on the same testimony, we also conclude that the jury finding, that neither Greenville nor Southern Pacific was negligent, was not against the great weight and preponderance of the evidence.

Because we find evidence in the record both legally and factually sufficient to support the jury's adverse findings on the issues of defective product and negligence, it is unnecessary for us to determine if the evidence also supported the jury finding that Williams suffered zero damages, as complained of in point of error seven. *Johnson*, 652 S.W.2d at 449.

We overrule points of error one, two, three and seven.

### Points of Error Four and Five

In points of error four and five, Williams contends that there was no evidence or, alternatively, insufficient evidence to support the jury's findings that (1) he was negligent, and (2) his negligence was 100% of the cause of his injuries.

■ In applying a "no evidence" standard of review to the points of error raised by the party without the burden of proof, we consider only the evidence and inferences that tend to support the finding, and we disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. at 664, 244 S.W.2d at 661.

■ The record contains testimony from which the jury could have found that Williams was advised of Radcliff's procedure for safely unloading cars, that he failed to comply with this procedure, and that if he had complied, the accident might not have happened. This testimony tends to support the jury finding on Williams' negligence, and we disregard all evidence and inferences to the contrary.

As discussed above, the record contains legally sufficient evidence to support the jury finding that Southern Pacific and Greenville were not negligent. Because there is legally sufficient evidence to support the findings that Williams was negligent and that Southern Pacific and Greenville were not negligent, we find legally sufficient evidence to support the jury finding that Williams was 100% negligent.

Williams insists that his negligent conduct consisted of a failure to discover or guard against a product defect. He contends that, under the reasoning in *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91 (Tex. 1988), and *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), his failure to discover or guard against a product defect was not a defense against strict liability.

■ Williams accurately states that a plaintiff's contributory negligence in failing to discover a defect or guard against its existence is not a defense to strict liability.

*Duncan,* 665 S.W.2d at 423. However, the jury found that the hopper car was not defective. Moreover, Williams' negligence had consequences other than a failure to discover or guard against a product defect. Williams also pled the theory of products liability based on negligence. In suits on that theory filed before September 2, 1987 (as was this one), a plaintiff's contributory negligence bars recovery unless the plaintiff's negligence is less than that of the defendants against whom recovery is sought. Tex.Civ.Prac. & Rem.Code Ann. sec. 33.001 (Vernon 1986).[1] Therefore, Williams' contributory negligence cannot be disregarded.

As discussed above, in examining "factual insufficiency" points we consider and weigh all the evidence, both in support of and contrary to the challenged finding. The finding must be upheld unless it is against the great weight and preponderance of the evidence. *In re King's Estate,* 150 Tex. at 665, 244 S.W.2d at 661; *M.J. Sheridan & Son Co.,* 731 S.W.2d at 623. Having studied the testimony summarized above, we conclude the jury findings, that Williams was negligent, and such negligence was 100% the cause of his injuries, were not against the great weight and preponderance of the evidence.

We overrule Williams' fourth and fifth points of error.

### Point of Error Six

 Williams urges in his sixth point of error that the trial court erred in refusing to give the jury his requested instruction that a failure to discover any product defect or to guard against the possibility of any defect is not negligence. In issuing explanatory jury instructions, the trial court has wide discretion to determine the sufficiency of such explanations. *K–Mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632, 636 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

 We note that Williams did not preserve this point because he failed to

present his requested instruction before the jury began its deliberations. *Missouri Pac. R.R. v. Cross,* 501 S.W.2d 868, 872–73 (Tex.1973); *Sudderth v. Howard,* 560 S.W.2d 511, 515–16 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); Tex.R.Civ.P. 272. Although the trial court and the parties may have agreed, in the interest of time, to debate special instructions and objections after submitting the charge to the jury, such an agreement cannot be recognized by this Court. *Missouri Pac. R.R.,* 501 S.W.2d at 872–73; *Sudderth,* 560 S.W.2d at 515–16; Tex.R.Civ.P. 272.

We overrule the sixth point of error.

### Point of Error Eight

In his eighth point of error, Williams asserts that the trial court erred in submitting Special Issue No. 2 and the conditional language preceding it, as worded and as placed in the charge. Special Issue No. 2 read as follows:

> If you have found, in answer to Special Issue 1, 4 or 7 that more than one party's acts produced or contributed to cause Byron Williams' injuries, and only 9in [sic] that event, then answer the following issue:
>
> Find the percentage of negligence for Byron Williams' injuries by the following [parties]:

 Again, we note that Williams' objection to the instruction was not presented until after submission to the jury. This Court cannot honor an agreement by the trial court and parties to raise objections to the charge after submission to the jury. *Missouri Pac. R.R.,* 501 S.W.2d at 872–73; *Sudderth,* 560 S.W.2d at 515–16. Therefore, the error has not been preserved for appellate review.

We overrule the eighth point of error.

The judgment of the trial court is affirmed.

---

1. Continued in effect for cases filed before September 2, 1987 by ch. 2, sec. 4.05, 1st Called Sess., 1987 Tex.Gen.Laws 37, 51.