

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00214-CV

## IN THE INTEREST OF J.C., AN ADULT

**From the County Court at Law No. 2**
**Johnson County, Texas**
**Trial Court No. CC-MH20180071**

# OPINION

J.C., an adult, was involuntarily committed to a mental health facility for inpatient care not to exceed 90 days.[1]  Because J.C.'s legal and factual sufficiency complaints are either not preserved or are overruled and because evidence was either not erroneously admitted or if erroneously admitted was not harmful, we affirm the trial court's orders temporarily committing J.C. to the mental health facility and authorizing the administration of medication.

---

[1] The Texas Supreme Court has held that due to the stigma of being committed to a mental hospital and the stigma of being subjected to an order authorizing psychoactive medication, appeals from such orders are not moot even if a patient is discharged from involuntary commitment to a mental hospital prior to a disposition in an appeal.  *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980).

**TEMPORARY COMMITMENT**

Section 574.034(a) of the Texas Health and Safety Code provides that a trial court may order temporary inpatient mental-health services if the factfinder, the trial court judge or the jury, finds by clear and convincing evidence that the proposed patient is mentally ill and at least one of three criteria results from that mental illness. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2017). Two of the criteria are that the proposed patient is likely to cause serious harm to himself or others. *Id*. § 574.034(a)(2)(A)-(B). The third criterion is that: (1) the proposed patient is suffering severe and abnormal mental, emotional, or physical distress; (2) the proposed patient's mental or physical deterioration impacts his or her ability to function independently, "which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for [his] basic needs, including food, clothing, health, or safety"; and (3) the proposed patient is unable to make rational and informed decisions as to whether or not to submit to treatment. *Id*. § 574.034(a)(2)(C). If the factfinder finds that the proposed patient meets any of the three commitment criteria prescribed by (a), the factfinder must specify which criterion forms the basis of the decision. *Id*. § 574.034(c). A trial court may also issue an order authorizing the administration of psychoactive medication but only if the proposed patient is under a valid order for temporary or involuntary mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2017); *In re F.M.*, 183 S.W.3d 489, 500 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

In this case, the jury found that J.C. is mentally ill and found that as a result thereof: (1) J.C. is likely to cause serious harm to himself; and (2) J.C. is suffering severe and

abnormal mental, emotional, or physical distress; is experiencing substantial deterioration of his ability to function independently which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs; and is unable to make a rational and informed decision about whether to submit to treatment. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (C) (West 2017). Based on the jury's verdict, the trial court ordered temporary in-patient mental health services for J.C. After another hearing before the court only, the trial court ordered the administration of psychoactive medication.

**SUFFICIENCY OF THE EVIDENCE**

In his first issue, J.C. does not challenge the jury's determination that he has a mental illness. Rather, J.C. challenges the legal and factual sufficiency of the evidence to support the jury's finding that J.C. is likely to cause serious harm to himself and could not provide for his basic needs. J.C. also challenges the legal and factual sufficiency of the evidence to support the trial court's order authorizing the administration of psychoactive medication. Specifically, J.C. contends there was either no or insufficient evidence of expert testimony or an overt act to support the serious harm finding or of an overt act or continuing pattern of behavior that tends to confirm J.C.'s distress and deterioration of his ability to function to support the finding of J.C.'s inability to provide for his basic needs. He also contends that because the insufficiency of the evidence to support the order of temporary commitment invalidates that order, the evidence is insufficient to support the order authorizing the administration of psychoactive medication.

In a jury trial, a legal sufficiency issue must be preserved through one of the following procedural steps in the trial court: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220-21 (Tex. 1992); *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701, 704 (Tex. 1987). Further, to complain about the factual sufficiency of the evidence to support a jury finding, a party must file a motion for new trial. *See* TEX. R. CIV. P. 324(b). A review of the record reveals that J.C. did not take any of the procedural steps necessary to advance either his legal or factual sufficiency challenges for appellate review. Thus, J.C.'s arguments regarding the sufficiency of the evidence to support the temporary commitment order are not preserved.

As to J.C.'s remaining argument that the evidence is legally and factually insufficient to support the order authorizing the administration of psychoactive medication, those arguments are preserved because the hearing was before the court, not the jury. However, J.C. only argued that "because the Order for Temporary In-Patient Mental Health Services should be reversed, so too should the Order for Customary Administration of Psychoactive Medication." He asserts no other reason why the evidence is legally or factually insufficient to support the order. Accordingly, because the temporary commitment order is not being reversed, the order authorizing the administration of psychoactive medication is supported by that order. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2017). Thus, the evidence is sufficient to

support the order authorizing the administration of psychoactive medication. *See In re F.M.*, 183 S.W.3d 489, 500 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *K.T. v. State*, 68 S.W.3d 887, 894 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

J.C.'s first issue is overruled.

**ADMISSION OF EVIDENCE**

In his second issue, J.C. complains about the admission of evidence over his objection. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In the Interest of J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). Whether a trial court abused its discretion in making an evidentiary ruling is a question of law. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). Erroneous admission of evidence is harmless unless the error probably (though not necessarily) caused the rendition of an improper judgment. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008). A reviewing court must evaluate the whole case from voir dire to closing argument, considering the "state of the evidence, the strength and weakness of the case, and the verdict." *Id.* If erroneously admitted or excluded evidence was crucial to a key issue, the error was likely harmful. *Id.* at 873. However, admission or exclusion is likely harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference. *Id.*

*Physician's Certificate*

J.C. first argues that the two Certificates of Medical Examination for Mental Illness, one prepared by Dr. Paul Schneider and another prepared by Dr. Aaron Assefaw, were

improperly admitted over his hearsay objection.[2]  The State concedes that the certificates were erroneously admitted into evidence but contends the error was harmless because the evidence contained within the certificates was cumulative of the testimony at trial.

State's Exhibit 1 was the certificate completed by Dr. Paul Schneider.  In this certificate, the doctor diagnosed J.C. with paranoid schizophrenia.  Dr. Assefaw testified that he also diagnosed J.C. with schizophrenia and described J.C.'s paranoid delusions.  Dr. Schneider's certificate also contains his conclusions that J.C. was likely to cause harm to himself and others and was experiencing distress and deterioration of his ability to function.  Dr. Assefaw testified about how J.C.'s condition could cause him to harm himself.  Dr. Schneider's certificate also contains examples of J.C.'s delusions, such as his belief that he is the President of the United States and that the police picked up the wrong person.  These same delusions were described by Officer Aaron Lopez,[3] Dr. Assefaw, and J.C., himself.  J.C. repeatedly stated to the jury that he is the king and that he is not J.C. but J.C. is a son of his.

Dr. Schneider's certificate also contains the assertion that J.C. was abusing his mother and had been aggressive towards his mother's nurse, Renee Mullis.  The jury heard more detailed evidence of these allegations directly from Mullis.  Lastly, Dr.

---

[2] The Physician's Certificates are not required to be admitted into evidence; they *may* be admitted if the proposed patient waives cross-examination of witnesses. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(f) (West 2017).  At least two certificates must be "on file with the court" before a hearing on an application for court-ordered mental health services may be held. *Id*. § 574.009.

[3] Officer Lopez had been called to J.C.'s residence to conduct a welfare check on J.C. after J.C. had aggressively confronted the nurse of J.C.'s mother.  During the welfare check, Officer Lopez decided to take J.C. into custody.

Schneider's certificate listed some behaviors exhibited by J.C., such as J.C. responding to internal stimuli, waving his hands in the air, being "unkempt," aggressive, and having poor insight. All of this is evidence that the jury also heard from Mullis, Officer Lopez, and Dr. Assefaw.

State's Exhibit 2 was Dr. Assefaw's certificate. Dr. Assefaw's certificate also contained the same evidence that the jury heard directly from the witnesses. Dr. Assefaw testified about his diagnosis and opined that J.C. was likely to cause harm to himself or others and testified about the deterioration of J.C.'s ability to function. Like Dr. Schneider's certificate, Dr. Assefaw's certificate contained a description of J.C.'s delusions, which were demonstrated by J.C. when he testified.

J.C. contends that, based on the Dallas Court of Appeals' opinion in *Fields v. State*, the erroneous admission of the certificates mandates a reversal. *See Fields v. State*, 690 S.W.2d 37 (Tex. App.—Dallas 1985, no writ). *Fields* is distinguishable. In *Fields*, no physician testified at the commitment hearing; thus, the certificates, which were determined to be erroneously admitted, were harmful. Here, the statements in the certificates were cumulative of the other evidence admitted through testimony by witnesses. Accordingly, assuming without deciding that the trial court erred in admitting the certificates, and after reviewing the entire record, we cannot say that the admission of the two certificates probably caused the rendition of an improper judgment.

*Real Time Tele-Video Testimony*

Next, J.C. argues that the trial court abused its discretion in allowing a witness to testify electronically, via Skype.

A trial court has broad discretion over the conduct of a trial. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). For example, under Rule of Evidence 611, a trial court has reasonable control over the mode and order of interrogation of witnesses and presentation of evidence. TEX. R. EVID. 611. Under this rule, the scope of a trial court's exercise of discretion is limited to that which is (1) reasonable and (2) in the pursuit of justice as well as efficiency. *Id.*; *Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005).

In support of his argument, J.C. relies on the opinion in *Guimaraes v. Brann*, where the First Court of Appeals upheld the trial court's denial of a witness's request to testify via Skype. *See Guimaraes v. Brann*, No. 01-16-00093-CV, ___ S.W.3d ___, 2018 Tex. App. LEXIS 5587 (Tex. App.—Houston [1st Dist.] July 24, 2018, no pet. h.). However, in *Guimaraes*, the witness was a party to the proceeding and had no reason to not appear in court other than to avoid being arrested. In other words, the witness *chose* not to appear in person. Citing *Dang*, *Dow Chemical*, and Rule 611, the court of appeals would not hold the trial court abused its discretion in denying the appearance of the witness via Skype under those circumstances. [4]

Those same circumstances are not present in this case. Here, the witness was not a party to the commitment hearing; she was J.C.'s daughter. J.C. objected to the witness's testimony, arguing that no extraordinary circumstances existed for the witness's absence. However, the record shows that the commitment hearing was set on June 22, 2018 for

---

[4] The attack in this case is on the trial court's evidentiary decision to allow the presentation of evidence by Skype. In *Guimaraes*, the attack was on the trial court's decision to exclude evidence offered via Skype. It is important to note that both decisions are reviewed by the same standard—for an abuse of discretion. *In the Interest of J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

four days later on June 25, 2018, with testimony starting on June 26, 2018. The record also shows that the witness lived in Florida.

There is no Texas case authority expressly *permitting* the use of real time tele-video communication technology, such as Skype, as a means to present testimony or otherwise appear in court. We note, however, that through the years, exceptions have been made to the tradition for face-to-face testimony or appearances. The most common form of presenting testimony of a witness that is not present in the courtroom is probably deposition testimony. Originally, depositions were only available as a written transcription of sworn testimony given before a court reporter. This written testimony was then read to the jury during the course of the trial. When technology developed to allow for the video recording of depositions, that technology was embraced as preferable because the testimony was not simply read to the jury. The jury could hear the actual witnesses' responses, complete with the tone and timber, the cadence and certainty, and the inflections of the witness as well as observe the inaudible behavioral movements that are so useful to a jury in understanding the witnesses' verbal responses and determining the weight to give that testimony.

As another example, rather than appearing in court in person pursuant to a bench warrant, inmates may be required to testify or appear in a civil proceeding by alternate means. *See In the Interest of Z.L.T.*, 124 S.W.3d 163 (Tex. 2003). The opinion in *Z.L.T.* provides a list of factors trial courts should consider when deciding whether to grant an inmate's request for a bench warrant. These factors include: the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to

the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, noncumulative testimony that, cannot be effectively presented *by deposition, telephone, or some other means*; whether the prisoner's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the prisoner's probability of success on the merits. *Id.* at 165-66 (emphasis added).

Further, the legislature has specifically permitted participation by alternate means in family law matters. *See* TEX. FAM. CODE ANN. § 264.0091 (West 2008) ("Subject to the availability of funds, the department, … shall expand the use of teleconferencing and videoconferencing to facilitate participation by medical experts, children, and other individuals in court proceedings…."); *see also, e.g. id.* § 153.707 (allowing a party to present evidence telephonically if military duty precludes a conservator from appearing at the scheduled hearing); *id.* § 157.163 (allowing a hearing regarding a parent's indigency to be conducted telephonically); and *id.* § 157.105 (allowing a release hearing to be conducted telephonically).

With the increasing advancements in technology, trial courts are frequently asked to use those advancements and appellate courts are asked to review those decisions. We see no reason at this time to create a *per se* rule precluding the trial court's admission of testimony in a trial through alternate means such as Skype or other technological platform that accommodates video as well as audio presentation of evidence. We leave that decision to the discretion of the trial court based on the facts and circumstances

presented and subject to appellate review for an abuse of that discretion. *See e.g. Clay v. State*, 382 S.W.3d 465, 470 (Tex. App.—Waco 2012), *aff'd* 391 S.W.3d 94 (Tex. Crim. App. 2013) ("…we should not stand in the way of the future by declaring that all affidavits for search warrants sworn to over the telephone are necessarily invalid. We are not today deciding what the outer boundaries of such remote methods of making oaths are acceptable as the legislature may do. Rather, we are only deciding if the procedure utilized is prohibited by the existing statute and hold that, under the facts of this case, it is not. We do not here define what procedural safeguards may be necessary if the officer and person administering the oath do not otherwise know each other and thus may not recognize each other's voice over the telephone.").

Accordingly, based on this record, because of the short timetable for the hearing and the distance the witness would have to travel to attend the hearing in person and because the trial court has discretion over the conduct of the trial, we cannot say that the trial court abused its discretion in permitting the non-party witness to testify via a real time tele-video communication platform, specifically Skype.

J.C.'s second issue is overruled.

**CONCLUSION**

Having overruled each issue, the trial court's Order for Temporary In-Patient Mental Health Services and corresponding Order for Customary Administration of Psychoactive Medication, both signed on June 26, 2018, are affirmed.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed October 31, 2018
[CV06]

