HUGHES DRILLING FLUIDS, INC., A
DIVISION OF HUGHES TOOL
COMPANY, et al., Appellants,

v.

Donald R. EUBANKS, et al., Appellees.

No. B14–85–716CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 11, 1986.

Rehearings Denied March 19 and
April 16, 1987.

Michael P. Jung, Dallas, Gordon A. Holloway, William B. Allison, Houston, for appellants.

Joseph D. Jamail, Janet Evans, W. James Kronzer, Houston, for appellees.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

Hughes Tool Company and Hughes Drilling Fluids, Inc., a division of Hughes Tool Company, (appellants) appeal from a judgment for $6,707,780 rendered against them in a personal injury suit. In six points of error appellants challenge the trial court's refusal to submit special issues on intoxication; its submission of special issues on damages for plaintiff Donald Eubanks' two young sons; its overruling of appellants' motion for new trial based on newly discovered evidence; its refusal to admit certain testimony of the investigating officer; and its refusal to admit evidence of other accidents at the scene in question. In addition, appellants assert that the evidence supporting some of the jury findings is factually insufficient. We find error in the award of damages to Eric and Sean Eubanks and modify the judgment to delete those damages. We affirm the judgment as modified.

On December 30, 1982, Donald Eubanks was working for his father, clearing land on a ranch between Dayton and Liberty. At the end of the day he and his father shared a pre-New Year's Eve drink, and he then left for home. He stopped in Dayton to buy beer and drank two and part of a third while continuing home. Near the intersection of Highway 90 and Crosby-Dayton Road in eastern Harris County, Eubanks allegedly was forced off the road by a truck owned and operated by appellants. He lost control of his vehicle, went into a ditch and turned over several times. He suffered severe injuries, resulting in paraplegia. The truck did not stop. Eubanks' suit against appellants was tried to a jury, which found that a driver of a Hughes Drilling Fluids truck committed certain negligent acts and that such negligence was a proximate cause of the accident. The jury further found that Eubanks was not negligent in his control of the truck, application of the brakes and lookout.

In their first point of error, appellants assert that the trial court erred in refusing to submit special issues inquiring whether Eubanks was operating his vehicle while under the influence of intoxicating liquor and, if so, whether such action was a proximate cause of the incident. In support of this argument, appellants rely on the rule in *Murray v. O & A Express, Inc.*, 630 S.W.2d 633 (Tex.1982): "The unexcused violation of a penal statute constitutes negligence as a matter of law if such statute was designed to prevent injuries to a class of persons to which the injured party belongs." *Id.* at 636. Appellants argue that the evidence admitted at trial conclusively

established that Eubanks was drunk at the time of the accident and, therefore, in violation of the driving while intoxicated statute. Act of June 13, 1979, ch. 682, § 3, 1979 Tex.Gen.Laws 1608, 1609, *amended by* Act of June 16, 1983, ch. 303, § 3, 1983 Tex.Gen.Laws 1568, 1574–77. Further, as this statute is obviously a highway safety measure and is designed to prevent the type of injury sustained by Eubanks, his violation of this statute must be considered negligence per se. Thus, appellants conclude, the court below should have allowed their special issues on the matter of intoxication and proximate cause. We are not persuaded by their arguments.

Appellants concede that their application of the *Murray* rule to the present fact situation has not been accepted by all Texas courts. While several Texas courts of appeal have agreed with appellants' argument, other courts have held that driving while intoxicated is not negligence per se; instead, they regard intoxication as an evidentiary matter to be considered by the jury when making its ultimate determination of the negligence of the party.

*Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951), is often cited as authority in those cases which view intoxication as an evidentiary issue. Appellants argue that *Benoit* is inapplicable because it is neither a negligence per se nor a driving while intoxicated case. We note, however, that *Benoit* does contain relevant language:

> Evidence of intoxication, standing alone, does not establish negligence or proximate cause. There must be evidence of other misconduct sufficient to establish, by a preponderance of the evidence, that the person was guilty of performing some act, or failing to perform some act, which an ordinarily prudent person would have performed.... Evidence of intoxication is an evidentiary fact to be

considered by the jury, or trier of the facts, in determining whether or not a person is guilty of some act of contributory negligence, but the fact of intoxication alone would not convict the deceased of negligence.

*Id.* at 798.

In most of the cases cited by appellants in support of their negligence per se argument, there was evidence of other negligent conduct in addition to the conduct of driving while intoxicated.[1] Thus, there was some contributing factor which, in combination with the intoxication, caused the party to be "at fault."

▪ Here, we find no evidence in the record which indicates that any act by Eubanks, regardless of his alleged intoxication, contributed to cause the accident and his resulting injuries. Witness Harold Hart, sitting in his van at the intersection, stated that Eubanks was neither speeding nor driving erratically and had his truck in his own lane. Another witness, Jim Bond, following Eubanks on the highway, also testified that Eubanks was not speeding and did nothing improper to cause the accident. Both men testified, and the jury so found, that the Hughes truck's move over the center line into Eubank's half of the road was the precipitating factor. No one seriously contended that Eubanks' turn to the right to avoid the truck was improper conduct. In summary, there was no evidence to indicate that Eubanks' driving was affected by his drinking.

▪ While we recognize that drinking and driving is not to be condoned, we decline adoption of a hard and fast rule which holds that one who drinks and is involved in an accident is to be held negligent per se. *See* 31 Texas L.Rev. 592 (1953) (discussing the method of submitting intoxication to a jury). Such a rule would be inequitable in a situation like this one where there is *no* evidence that any act by Eubanks, notwith-

---

1. *Galveston—Houston Breweries, Inc. v. Naylor,* 249 S.W.2d 262 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.) (failure to keep a proper lookout and have automobile under proper control); *Flanigan v. Texas & Pacific Railway,* 273 S.W.2d 110 (Tex.Civ.App.—El Paso 1954, writ ref'd n.r.e.) (failure to stop before proceeding across a railroad grade crossing); *Ford Motor Co. v. Pool,* 688 S.W.2d 879 (Tex.App.—Texarkana 1985), *aff'd in part and rev'd in part,* 715 S.W.2d 629 (Tex.1986) (excessive speed); *Castro v. Hernandez-Davila,* 694 S.W.2d 575 (Tex.App.—Corpus Christi 1985, no writ) (failure to control vehicle and to apply brakes).

standing his alleged intoxication, contributed to cause his accident and resulting injuries. Point of error one is overruled.

In point of error two, appellants argue that the trial court erred in submitting special issues inquiring as to the damages of Eric and Sean Eubanks because (i) as a matter of law, neither is entitled to a recovery of damages in this case, and (ii) even if they were so entitled, the special issues incorrectly state the elements of damages to which they would be entitled. Eric and Sean Eubanks are the minor sons of Donald Eubanks. In Special Issues Nos. 10 and 11, the jury was asked to consider the following elements of damages in awarding them compensation: loss of father's care, maintenance, support, services, education, advice and counsel both in the past and future.

Appellants state that under present Texas law, Eric and Sean do not have an independent action against a third party tortfeasor for loss of parental consortium. Appellees, on the other hand, urge this court to recognize such a cause of action in accord with recent Supreme Court decisions recognizing spousal consortium and allowing recovery under the wrongful death statute for loss of companionship and mental anguish for the death of a minor child or parent. *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex.1978); *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985).

Two appellate courts have recently denied recovery because causes of action for loss of parental consortium and/or loss of the companionship of a child are not allowed under the laws of this state. *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 379 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *Jannette v. Deprez*, 701 S.W.2d 56, 61 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The *Bennight* court admitted that theirs was a difficult conclusion to reach but pointed out that a cause of action for loss of parental consortium "would require the adjustment of several established legal principles." Moreover, the court stated that it is not an intermediate appellate court's role to create a new cause of action. Consequently, the court chose to leave the decision to the legislature or the Supreme Court. *Bennight*, 670 S.W.2d at 379–80.

■ This court is not compelled to follow *Bennight* and *Jannette*. However, we too feel the decision to extend the right of recovery in these cases lies with the legislature or the Supreme Court. Until one or the other body mandates a cause of action for loss of parental consortium, we adhere to the present law, which allows no such recovery. Therefore, the award of damages to appellees is reformed to delete the $1,000,000 award ($500,000 to each) to Eric and Sean Eubanks.

In view of this ruling, we do not discuss appellants' argument regarding the wording of Special Issues Nos. 10 and 11.

Appellants next find error in the trial court's overruling of their motion for new trial based on newly discovered evidence. Appellants argue this evidence was concealed until after the trial and the entry of judgment. After the trial they received information through an anonymous telephone call that Donald Eubanks had relatives living in Harris County whom he had not named in reply to deposition questions. Two of those relatives, a stepsister and her husband, testified at the hearing on the motion for new trial that they were present at Eubanks' work-site prior to the accident and, further, testified as to the quantity of alcohol he consumed before he left for home. They also stated that Eubanks' father, Royce Eubanks, had told them there were no witnesses to the accident. A second stepsister's husband testified Royce Eubanks told him that after Donald Eubanks was discharged from the hospital, he and his wife went to the accident scene and sat there for several days, watching trucks, and then chose as defendant one that frequently passed that point.

Appellants assert that this evidence satisfies the rules for granting a new trial based on newly discovered evidence as set forth by the Supreme Court in *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983). The party seeking a new trial must satisfy the court that the evidence has

come to his knowledge since the trial; that it was not owing to the want of due diligence that it did not come sooner; that it is not cumulative; and that it is so material that it would probably produce a different result if a new trial were granted. The standard for reviewing the trial court's action is whether it constituted an abuse of discretion. *Id.* Therefore, we review the newly discovered evidence to see if it met the test in *Jackson* and to decide whether its exclusion was an abuse of discretion.

■ The testimony of the stepsister and her husband as to Eubanks' drinking adds little in the face of trial testimony that his blood alcohol content was .235 percent approximately two hours after the accident and .173 percent some three hours later. Given that this state defines intoxication for criminal purposes as an alcohol concentration of .10 or more, Tex.Rev.Civ.Stat. Ann. art. 6701*l*–1(a)(2)(B) (Vernon Supp. 1986), the jury had ample evidence regarding Eubanks' state of intoxication. This newly discovered evidence was not so material as to produce a different result were a new trial granted.

■ The newly discovered evidence that Royce Eubanks said there were no witnesses to the accident and that appellees concocted a story as to the identity of the truck is somewhat troublesome. However, we find that it does not rise to the standard of evidence on which a new trial should be granted. First, it may be characterized as impeachment evidence, which is not justification for a new trial. *New Amsterdam Casualty Co. v. Jordan*, 359 S.W.2d 864, 866 (Tex.1962) (quoting *Conwill v. Gulf, C. & S.F. Ry.*, 85 Tex. 96, 19 S.W. 1017 (1892)). Appellants' counsel admitted at the hearing that had he had this evidence when Royce Eubanks testified, he would have interrogated him about it. Second, the evidence is cumulative in the sense that there was considerable testimony at trial concerning the identity of the truck, and this testimony afforded the jury sufficient opportunity to question both the witnesses' ability to identify the truck and their motives.

■ Appellants argue that because they were prevented from discovering this evidence by the false deposition testimony of an adverse party, the fact that the evidence is merely cumulative or impeaching will not prevent the granting of a motion for new trial. *Steed v. Winder*, 130 S.W.2d 403, 404–05 (Tex.Civ.App.—Galveston 1939, no writ). However, a fair reading of Eubanks' deposition testimony does not necessarily substantiate concealment. When asked if he had any relatives living in Harris County, he did disclose his stepmother's name. Also, when questioning about who else was at the work-site before the accident, appellants' counsel initially asked about fellow employees and did not make it clear that in subsequent questions he was asking about anyone else *other than fellow employees.* Giving every reasonable presumption in favor of the trial court's order refusing a new trial, we find no abuse of discretion in the lower court's ruling. *Jackson*, 660 S.W.2d at 809–10. Thus, point of error three is overruled.

Appellant's fourth point of error concerns the trial court's refusal to admit certain testimony of the investigating officer, Norman Welsh. Officer Welsh testified on a bill of exception to the following:

> After I moved my car around to Highway 90 and parked it on the shoulder, I got out of my car and was immediately approached by a man that advised me that although he did not see the accident occur, he witnessed the red pickup that was involved just moments before on Highway 90 traveling westbound driving erratically. Which, as he described it, he was passing several cars at a high rate of speed, and on at least one occasion the lefthand wheels of the pickup left the left side of the roadway.

Officer Welsh's attention was then diverted by the need to direct traffic and investigate the accident. When he looked again for this witness, the man was gone.

■ Appellants offered this testimony under Rule 803(2) of the Texas Rules of Evidence, which is the "excited utterance" exception to the hearsay rule. Rule 803(2) defines an excited utterance as a statement

**764**

relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. We hold that the unidentified man's statement was not admissible as an excited utterance and that the trial court did not abuse its discretion in refusing to admit it. The man had not witnessed the accident, and what he had to say actually related to a prior event—the alleged erratic driving. Although this man approached the officer immediately upon the latter's arrival (approximately twenty minutes after the accident, according to the officer's estimate), there is no evidence that he was anything but calm; therefore, there was no "stress of excitement" as required by the exception. *See Southwestern Bell Telephone Co. v. Griffith,* 575 S.W.2d 92, 102–03 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Furthermore, there was evidence that there were two red pickups in the vicinity of the accident; without the man's identity, it is impossible to clarify which truck was driving erratically. This part of Officer Welsh's testimony was properly excluded, and point of error four is overruled.

In point of error five appellants maintain that the trial court erred in refusing to admit evidence of other accidents at the scene of the Eubanks accident. They argue that these prior accidents occurred under reasonably similar circumstances and were relevant to the issue of whether Eubanks' intoxication was a cause of this accident. Evidence of earlier accidents which occurred under reasonably similar but not necessarily identical circumstances is admissible. *Missouri-Kansas-Texas Railroad v. May,* 600 S.W.2d 755, 756 (Tex. 1980).

Defendants' Exhibit 53 included six one-car accident reports involving westbound drivers named Sullivan, Venable, Carrier, Scott, Rosser and Inman. Only two of those reports (Venable and Carrier) involved alcohol. Venable was speeding on a foggy night, while Carrier lost control and crossed the road, ending up in the opposite ditch. Scott and Rosser were speeding, and Rosser's accident occurred during the day. Inman's accident occurred during a heavy fog. Only the Sullivan accident was similar to the Eubanks accident in that Sullivan swerved to the right to avoid an unidentified vehicle, lost control and hit the ditch. Again, alcohol was not a factor in that accident.

The reports contained in Defendants' Exhibit 54 bear even fewer similarities. Five of the accidents involved two vehicles approaching one another in a manner other than from the east and west on Highway 90 (Franklin, Nuncio, Stokes, Maness, Trolinger). A sixth accident occurred during the day when one car slowed to turn left off of the highway and was hit by a car going the other way. Three of the reports concerned one-car accidents involving eastbound vehicles (Shockley, Arceneaux and Walker)—one of which was speeding, one of which was trying to turn right onto another road and one of which missed the curve. Finally, the Lakey accident, while similar except for the absence of alcohol, adds nothing to appellants' cause.

■ We conclude that there is not sufficient evidence of similarity to permit the admission of these accident reports into evidence. While the sheer number of these reports proves this is a dangerous section of Highway 90, they prove nothing more. Moreover, there is no showing of harm to appellants because the jury heard ample evidence of Eubanks' intoxication and the conditions at the accident scene and thus was fully apprised of both without the introduction of the accident reports. *See Texas Power & Light Co. v. Holder,* 385 S.W.2d 873, 889 (Tex.Civ.App.—Tyler 1964), *writ ref'd n.r.e. per curiam,* 393 S.W.2d 821 (Tex.1965). The fifth point of error is overruled.

■ Finally, in response to Special Issues Nos. 1, 2, 3 and 4, the jury found that a driver of a Hughes Drilling Fluids truck committed certain negligent acts and that such negligence was a proximate cause of the accident. Appellants argue in point of error six that these findings are against the great weight and preponderance of the evidence because the jury's conclusion that the truck involved was a Hughes Drilling

Fluids truck is also against the great weight and preponderance of the evidence. Specifically, appellants challenge the testimony of witnesses Bond and Hart on the grounds of the dark conditions, their poor vantage points, and their inconsistent testimony. In addition, they point to the evidence presented at trial tending to prove that no Hughes truck could have been at the accident scene at the time in question.

In considering a factual sufficiency of the evidence point of error, we consider and weigh all the evidence in the case and set aside the verdict and remand the cause for new trial if we conclude that the evidence is too weak to support the finding or that the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Precision Homes, Inc. v. Cooper,* 671 S.W.2d 924, 929 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Donald Eubanks could not identify the truck that forced him off the road. Two eyewitnesses identified it as a Hughes Drilling Fluids truck. Harold Hart, who was stopped at the intersection of Crosby-Dayton Road and Highway 90, testified that he had his headlights on and saw the Hughes logo on the trailer and that he was familiar with this logo because of his frequent travels on Highway 90. Bettie Sue Cream, who lived near the intersection and went out to help after the accident, identified Hart as having been at the scene. Jim Bond, who was following Eubanks on the highway, also testified (by deposition) that he saw "Hughes Drilling Fluids" on the truck as it passed him. Neither witness remained at the scene to talk to Officer Welsh; however, Bond left his card with a note that he had seen the accident in Eubanks' pocket, and Hart later contacted Eubanks at the hospital.

Appellants countered this testimony with that of an expert in night vision, who questioned Hart's ability to see the lettering on the truck given the lighting conditions and the viewing angle. Appellants also pointed out that several other companies, whose trucks frequently travel Highway 90, use the same colors in their logos. John Sporar, production services manager for Hughes Drilling Fluids, testified that according to company records, there were no Hughes trucks on that road at that time. However, he also testified that a driver carrying a load in the direction of Liberty, Kountze or Louisiana is allowed to choose his route—Interstate 10 or Highway 90. The latter route would take the driver past the scene of the accident.

During appellees' examination of Mr. Sporar, counsel questioned him about a truck delivery ticket dated December 30, 1982, showing that a Hughes employee, Warren Rist, left the Hughes plant on Sheldon Road at 6:00 p.m., hauling palletized sack material to Kountze on a bobtail truck. (Hart and Bond identified the eighteen-wheeler as a bulk or tank carrier, however; the bobtail truck carries a gooseneck trailer.) The plant is approximately ten miles from the accident site; therefore, had he taken Highway 90, Rist would have been at the scene between 6:15 and 6:30. Testimony from Mr. and Mrs. Cream, Hart and Bond timed the accident as occurring anywhere between 6:15 and 6:50. Officer Welsh got a call from his dispatcher at 7:12, and the ambulance attendant got one from her dispatcher at 7:19. Rist arrived in Kountze at 8:00 p.m., which is 90 to 100 miles by Highway 90 and a little further by Interstate 10. Rist testified that he drove the truck on Interstate 10 that day, and he listed his mileage on his delivery ticket as 109 miles. He no longer works for Hughes, but he does live with his brother-in-law, who is a Hughes manager.

As it is the sole province of the trier of fact to judge the credibility and weight to be given the testimony and to resolve conflicts in it, *Precision Homes, Inc.,* 671 S.W.2d at 929, the jury had to evaluate this testimony, particularly in relation to the exhibits and the other expert testimony. We cannot say that the jury's findings of negligence and proximate cause in this case are so against the great weight and preponderance of the evidence as to be manifestly unjust. Point of error six is overruled.

We affirm the judgment of the trial court with the modifications regarding the damages to Eric and Sean Eubanks.

SEARS, Justice, dissenting on motion for rehearing.

On Motion for Rehearing I am convinced that I erred in joining in the original opinion.

In response to Special Issues Nos. 10 and 11, the jury awarded $500,000 to each minor child for the loss of parental consortium. The original opinion held that under present Texas law, Eric and Sean cannot recover against a third party tortfeasor for this loss. The opinion then reformed the judgment to delete the $1,000,000 award. I concur with the original opinion with the exception of the reversal of the $1,000,000 award, and I respectfully dissent as to that portion of the opinion.

This court's only rationale for taking away the damages awarded to Eric and Sean is that Texas law does not provide for such damages. I would argue that it does, or in the alternative, that if it does not, then the time has come to recognize such a cause of action in the State of Texas.

In 1978 the Supreme Court held that a spouse has a cause of action for loss of consortium resulting from an injury to the other spouse caused by the negligence of a third party tortfeasor. *Whittlesey v. Miller*, 572 S.W.2d 665, 668 (Tex.1978). Much more recently, the Texarkana Court of Appeals upheld an award of damages for mental anguish to the parents of an infant born prematurely and allegedly blinded by the administration of high levels of oxygen. *Hall v. Birchfield*, 718 S.W.2d 313, 337–38 (Tex.App.—Texarkana 1986, no writ). That court cited *Whittlesey* and noted that "[n]o reasonable distinction can be drawn between a spouse's right to recover for loss of companionship and society of the other spouse and a parent's right to recover for loss of companionship and society of a child." *Id.* at 337.

I find no reasonable distinction between a parent's right to recover for the loss of companionship and society of a child and a child's right to recover for the loss of companionship and society of a parent. To find such a distinction would be discriminatory to the child. The Austin Court of Appeals recently declined to allow a child's cause of action for injuries to her mother, stating that it was not the role of an intermediate appellate court to create a new cause of action. However, the court did acknowledge the incongruity of allowing certain family members, but not others, to recover for substantially the same harm suffered by each. *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 379–80 (Tex.App.—Austin 1984, writ ref'd n.r.e.). In that case, the husband's loss of consortium was compensable; in the case before us, the wife was awarded damages for loss of consortium. Arguably, a child's loss is even more severe than that of a spouse or parent as the child is much more vulnerable and dependent upon the parent for care, comfort, advice, guidance and society.

Based upon the testimony at this trial, the jury found that Eric and Sean Eubanks each have sustained injuries resulting from the accident that rendered their father a paraplegic. The father has had difficulty adjusting to his condition, and his relationship and interaction with his family has deteriorated. He withdraws from any physical contact with his sons, tends to be too harsh with them and is obviously unable to participate in any physical activities with them. They, in turn, are becoming hostile and withdrawn and are having problems in school.

Although it was long overdue, this state finally recognized and allowed recovery of damages by children for loss of companionship and mental anguish in the wrongful *death* of a parent. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551 (Tex.1985). However, we have not as yet recognized and compensated the child for the loss the child suffers when the parent is severely injured but survives. Other states have recognized that no reasonable distinction can be drawn between death and severe injury where the effect on consortium is concerned. *Howard Frank, M.D., P.C. v. Superior Court of Arizona*, 150 Ariz. 228, 722 P.2d 955, 957 (1986); *Hay v.*

*Medical Center Hospital of Vermont,* 145 Vt. 533, 496 A.2d 939, 941 (1985); *Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190, 192 (1984); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424, 426 (1981); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690, 695 (1980). Often death is separated from severe injury by mere fortuity. *Howard Frank, M.D., P.C.,* 722 P.2d at 957. Indeed, it might be argued that injury is worse than death for the survivor because the presence of the injured family member is a constant reminder of what once was and will never be again.

Appellants argue that once the injured party has been compensated for his injuries he theoretically is placed in the position he would have been in had no injury occurred. They contend that the other family members have sustained no compensable loss. This argument ignores the unique nature of the injury to the other members of the family. Eric and Sean have suffered a reasonably recognizable injury, one that is separate and distinct from the injuries sustained by their father and one for which compensation is reasonable and necessary.

Appellants also argue that there is no basis for an award to the minor plaintiffs because Special Issues Nos. 10 and 11 incorrectly state the elements of damages to which they would be entitled. I agree with appellees that this contention is waived. To preserve error, appellants were required to point out distinctly the matter to which they objected and the grounds for their objection. Tex.R.Civ.P. 274. Failure to do so results in waiver of any complaint on that ground of appeal. *Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978). In their objections to the charge, appellants merely stated that the listed elements of damages were those of a wrongful death action and that Eric and Sean were not entitled to recover for wrongful death. The complaint at trial does not comport with the complaint made the basis of the point of error on appeal. Furthermore, the jury could and did find that there was a loss connected with each of the submitted elements of damages.

The Supreme Court has previously recognized that injuries to the familial relationship are significant and worthy of compensation. *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983). Justice Spears wrote, "The real loss sustained by a parent [in the loss of a child] is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society." *Id.* at 251. Certainly Eric and Sean have suffered this same loss of advice, comfort, companionship and society. Their father will never be able to pick the boys up, hold them in his arms, participate with them in athletic endeavors or represent the strong idol image of a father who has not lost the use of his arms and legs. If such a loss is compensable to a spouse or a parent, how can we say it is not a compensable loss to a child.

Although the *Sanchez* court was dealing with the Wrongful Death Act, they recognized earlier restrictions placed on recovery by the Supreme Court, and they reasoned, "It is, therefore, logical for this court to now act in response to the needs of a modern society, and abolish the antiquated rule in favor of recovery of loss of society and mental anguish." *Id.* at 252. The court was speaking of the prior rule, created by case law, imposing a pecuniary loss as a limitation of the damages recoverable. It is well-known that the legislature has attempted to amend the Wrongful Death Act on many occasions, yet none of the bills have passed. The Supreme Court recognized its role in *Sanchez* and *Cavnar* and did what the legislature has failed to do.

Now we are faced with a recognizable and compensable loss which has not yet been awarded to children who suffer this loss by way of negligent acts resulting in injury to a parent. We cannot look to the Wrongful Death Act for a solution because fortunately, or unfortunately, the parent survived the negligence of the tortfeasor. However, the solution is alive and well in the tort law of this state. This special loss has been recognized and compensated when a party has lost the consortium, love, companionship and society of a spouse who

has survived a tortfeasor's negligence. *Whittlesey,* 572 S.W.2d at 668. Further, the loss suffered by a parent whose child has survived the negligent acts of a tortfeasor has been held to be compensable. *Hall,* 718 S.W.2d at 337–38. It is my conviction that Texas law does provide for such a recovery and has simply not found the case to which such law should apply— until now. The jury in this case found injury to the plaintiff's sons and sought to compensate them for that injury with a monetary award. I would affirm that portion of the trial court's judgment awarding Eric and Sean $1,000,000.