Jesus ZAMARRON, Appellant,

v.

Gilberto ADAME, Jr., Appellee.

No. 08–92–00453–CV.

Court of Appeals of Texas,
El Paso.

Oct. 20, 1993.

Rehearing Overruled Nov. 17, 1993.

Brenda J. Norton, Juan Gonzalez, El Paso, for appellant.

Monty Kimball, Hicks & Associates, El Paso, for appellee.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

LARSEN, Justice.

Jesus Zamarron appeals from a take nothing judgment in favor of Gilberto Adame, Jr. Zamarron sued Adame for negligence arising out of a car accident. A jury found Zamarron 75 percent negligent and Adame 25 percent negligent. Zamarron claims this verdict was legally and factually insufficient. We affirm.

## FACTS

On May 9, 1991, around 10 p.m., Jesus Zamarron was driving home from a friend's house, where he and his wife had eaten dinner and Zamarron drank some beer. Zamarron was driving in the left-hand, east-bound lane of Rojas street, a four-lane road divided by a median, when defendant Adame hit him head-on. Adame was driving the wrong way down the divided road, and was cresting a hill when the collision occurred. Adame was cited for causing the accident. At a local hospital, Zamarron was given a blood test, which showed a blood alcohol level of .141 percent.

Zamarron sued Adame. Adame did not counterclaim, but in his answer alleged Zamarron was contributorily negligent in driving under the influence of alcohol, failing to apply his brakes, failing to take evasive action, and failing to keep a proper lookout.

The jury found both Zamarron and Adame negligent: assessing Zamarron's responsibility at 75 percent to Adame's 25 percent. The jury therefore did not reach the damage question.

## STANDARD OF REVIEW

When presented with a "no evidence" or legal sufficiency challenge, this Court considers only the evidence and all reasonable inferences drawn from it which, when viewed in their most favorable light, support the jury verdict or court finding. We ignore all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America,* 717 S.W.2d 588, 593 (Tex. 1986). A "no evidence" point of error may be sustained only when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) that the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.), *citing Royal Indemnity Co. v. Little Joe's Catfish Inn,* 636 S.W.2d 530, 531 (Tex.App.— San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 362–63 (1960).

On the other hand, when a factual sufficiency challenge is advanced, this Court examines all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986). We are not a fact finder, however, and may not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if the evidence would clearly support a different result. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.— Dallas 1986, writ ref'd n.r.e.). After considering and weighing all the evidence, we may set aside the jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## JURY CHARGE

Neither Adame nor Zamarron requested an issue on negligence per se. The case was submitted only under a common negligence theory, with a question on comparative fault.

## ADAME'S NEGLIGENCE

Adame readily admitted he was driving the wrong way on a one-way street. He claimed

there were no signs posted indicating the road was one way; that it was 10 p.m. and dark; and that he was generally unfamiliar with the street and the area. He stated he did not realize he was driving on the wrong side of the street.

Zamarron and his wife both testified that they returned to the accident scene about eight days after the collision and found three or four one-way signs posted along Rojas, all on Adame's route. They further testified that "1–85" appeared on the back of each sign, and that after investigating with the City Traffic Department, they determined the numbers meant the signs had been at their present location since January 1985. Maureen Spreyne testified that she had lived on James Kelley, a street which intersects Rojas, for seven years. Spreyne had worked with Adame, and he drove her home that evening just before the accident. She testified that there were no one-way signs on Rojas on the date of the accident; she noticed signs for the first time four to six days later.

Zamarron testified that at the time of the accident, Adame admitted his guilt, saying "[i]t's my fault. It's my fault." When asked about this statement, Adame admitted he could have made it, but really did not remember. Adame testified that although he felt the accident was not his fault because he did not know he was on a one-way street, he did not think it was Zamarron's fault either.

Adame was cited at the scene for causing the accident, even though the police officer smelled alcohol on Zamarron's breath.

Adame testified that he was uncertain how far away he was from Zamarron when he first saw headlights.

### ZAMARRON'S NEGLIGENCE

Zamarron was legally drunk at the time of the accident, with a blood alcohol level of .141 percent. He pleaded guilty to driving while intoxicated. He admitted drinking up to three beers before driving home, but stated he felt "sure of [his] hands."

Zamarron testified that his wife, a passenger, saw Adame's car just before he did. Zamarron also stated that when he first saw Adame, the two cars were 100 to 200 yards apart, and Adame was coming over the top of a hill toward him. Zamarron and his wife both testified that Zamarron was not driving erratically, zigzagging, or swerving to avoid other cars. They both testified that it was Adame's driving the wrong way that caused the collision. The investigating officer made the same determination, as he gave Adame the citation for causing the accident.

Adame argues that Zamarron had plenty of time to avoid the accident if he was 100 to 200 yards away when he first saw the car coming at him the wrong way. When Adame was asked if Zamarron took any evasive action, he said no. Even if Zamarron did try to evade Adame, the jury could conclude that had he not been intoxicated, his reflexes might have been sharper and the collision might have been avoided.

### THIRD CAR

There was one other factor in this accident. A car passed Zamarron on the right just before the crash. Zamarron testified he checked to insure that this driver had passed before turning into her lane to avoid Adame. Adame's testimony corroborates Zamarron's story. Adame testified that the driver passed him in the proper direction, saw the accident and came back to the scene.

### JURY VERDICT

■ We interpret the jury's verdict to mean that Zamarron's negligence in being intoxicated, in failing to apply his brakes, failing to take evasive action, or failing to keep a proper lookout was a greater cause of his damages than Adame's driving on the wrong side of the road.

There was no evidence that Zamarron failed to apply his brakes. The only evidence that Zamarron failed to take evasive action was Adame's testimony:

Q. What did you do to avoid the accident?

A. I hit my brakes and I geared [sic] to the right, put my steering wheel to the right.

Q. Did you see the other car taking any evasive action?

A. No sir.

Of course, both Zamarron and his wife testified that Zamarron did move to the right, but that he did not have enough time to completely avoid the accident. Adame testified that he hit the driver's side front bumper of Zamarron's truck. Adame's vehicle, on the other hand, sustained its damage head-on.

The only evidence that Zamarron failed to keep a proper lookout was Zamarron's testimony that his wife saw Adame's car before he did. In fact, the testimony from Zamarron indicates that he first saw Adame's car when it was 100 to 200 yards away. Adame testified that he was uncertain how far away Zamarron was when Adame saw him.

If the jury believed Adame's testimony that there were no one-way signs posted that night and Adame didn't have enough time to completely avoid the accident, then they could reasonably conclude Zamarron's intoxication contributed to the collision. The jury may have concluded that had Zamarron been sober, his reflexes would have been fast enough to avoid what Adame could not. However, Zamarron didn't have equal time to react. Both Adame and Zamarron testified that another car passed them just before the accident, in the right-hand lane, traveling in the proper direction. Zamarron testified he had to make sure that the driver was past him before he changed lanes. That she was a factor in the collision is supported by Adame's testimony tending to prove she was close to the accident when it occurred—she told Adame she saw the accident, even though it would have been in her rear-view mirror, on the crest of a hill.

## OTHER EVIDENCE

There was other information before the jury which was not relevant to the parties' negligence, and which might have affected the jury's decision. This evidence came in without objection. The jury heard that Zamarron had moved to the United States from Mexico in 1977. They heard that Zamarron was an unlicensed driver, that he had only a Mexican license that had expired. This information is significant because it indicates that Zamarron had no automobile insurance.

## CONCLUSIONS

■ If this author and eleven (or nine) like-minded persons had been on the jury, the verdict here would probably have been different. The role of an appellate court judge, however, as opposed to a juror, is not finding facts and second-guessing comparative negligence findings. In assessing the "no evidence" point of error, the Court concludes that viewing the evidence in the light most favorable to the verdict, there is more than a scintilla of support for the jury's findings. Point of Error One is overruled.

■ In reviewing a complaint that the evidence is insufficient to support a jury's verdict, as Zamarron asks us to do in Points of Error Two and Three, we must first ask whether we would reach the same verdict if charged with finding the facts. We have already concluded the answer to that is no. We then ask whether the jury must have been actuated by prejudice, sympathy, or some other incorrect motive, and if so, why? *Lake LBJ Municipal Utility Dist. v. Coulson*, 839 S.W.2d 880, 884–85 (Tex.App.—Austin 1992, no writ) (opinion on remand), citing W. St. John Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex.L.Rev. 803, 811–12 (1952).

Other courts have occasionally held jury verdicts on percentage of negligence to be against the great weight and preponderance of the evidence. Thus, in *Kehlenbrink v. Pickens*, 656 S.W.2d 668 (Tex.App.—Waco 1983, writ ref'd n.r.e.), the Court reversed the jury's apportionment of negligence 80 percent to plaintiff and 20 percent to defendant when plaintiff fell to his death through a patched portion of an 80 foot high catwalk welded by defendant. The Court held that although there was some evidence that plaintiff failed to keep a proper lookout, that evidence was factually insufficient to support the jury's finding that plaintiff was 80 percent negligent. *Kehlenbrink*, 656 S.W.2d at 670, *citing In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). *See also MacConnell v. Hill*, 569 S.W.2d 524 (Tex.Civ.App.—Corpus Christi 1978, no writ). Similarly, in *MacConnell*, the six-year old plaintiff was told by defendant to back away from a car's

open hood. The child was backing up as he was told, but slowly. The defendant then told the child to clear completely out of the way, but the child did not move fast enough to avoid being injured by a radiator hose which had burst. The Court held that a jury's apportionment of negligence 60 percent to the young plaintiff was against the great weight and preponderance of the evidence and remanded the case for a new trial.

■ Here, the record reveals some factors indicating prejudice might have influenced the jury's verdict. Our society recognizes that driving while intoxicated, as well as being a criminal act, is also one of our most serious public health problems. The jury might have been so troubled by Zamarron's intoxication that they chose to consider that factor above all others. Evidence of intoxication alone, however, will not establish proximate cause. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 798 (1951). It is inequitable to find a drunken party liable where no act on his part contributed to the accident, merely because he was intoxicated. *Hughes Drilling Fluids, Inc., a Division of Hughes Tools v. Eubanks*, 729 S.W.2d 759, 761 (Tex. App.—Houston [14th Dist.] 1986, writ granted), *set aside pending settlement*, 742 S.W.2d 275 (Tex.1987).

Furthermore, certain irrelevant evidence about Zamarron's immigration status, and that he was unlicensed and therefore uninsured, was before this jury. There was little legal purpose for the admission of this evidence other than to prejudice the jury. The jury's knowledge of these facts suggests some motivation for their verdict.

Nevertheless, we must conclude that the facts in this case provide some evidence to support a finding of negligence on Zamarron's part. Just as we feel compelled to conclude that there was more than a scintilla of evidence supporting the verdict, so must we conclude that it is not contrary to the overwhelming weight of the evidence. Points of Error Two and Three are overruled. The judgment of the trial court is affirmed.