Raffen 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-95-00174-CV








Carl A. Raffen and Eleanor Raffen, Individually, and as Survivors


of Thomas Dugan Raffen, Decedent, Appellants




v.




Ford Motor Company; Milton Joseph Hayes, Individually,


and d/b/a The Shanty; and Dorothy Elizabeth Combs, Appellees








FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT


NO. C-93-0342, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING









 Appellants Carl and Eleanor Raffen ("the Raffens") appeal from a take-nothing
judgment rendered following a jury trial. In eleven points of error, the Raffens assert that the trial
court abused its discretion in making evidentiary and discovery rulings and in submitting a jury
instruction; they also claim there is not sufficient evidence to support three of the jury's findings. 
Because we find no abuse of discretion, and because the assailed findings have sufficient
evidentiary support, we will affirm the trial-court judgment.



BACKGROUND


 On the evening of May 20, 1991, Thomas Raffen and his roommate Mark Hamilton
drove from San Marcos to "The Shanty," a bar at Canyon Lake. Thomas Raffen made a call from
The Shanty to his friend Darrel Peck around 9:00 p.m.; the evidence does not show how long the
two young men stayed at The Shanty after this phone call. At approximately 3:40 a.m. the next
morning, San Marcos Police Officer Peyton was dispatched to the scene of a major wreck in a
rural area outside San Marcos, where she discovered Hamilton's 1969 Ford Bronco upside down
a short distance from the road. She found both men dead underneath the car; the evidence
indicated the men had died two hours before Officer Peyton's arrival. An autopsy revealed that
Thomas Raffen died a few minutes after the wreck from mechanical asphyxiation, which was
caused by the weight of the Bronco resting on top of him. 

 Dr. Robert Bayardo testified that Thomas Raffen had a .17 percent blood alcohol
concentration at the time of death; Hamilton, who was driving, had a blood alcohol concentration
of .26 percent. Evidence from the accident scene indicated that Hamilton overcompensated to the
left after the car went off the right side of the road, sending the car across the two-lane highway
where it hit a ditch and flipped into the air landing upside down. The car slammed into a tree,
instantly killing Hamilton, then fell to the ground. One officer on the scene testified that he found
a carton of beer near the wrecked truck; another testified to finding two beer cans in the truck's
path off the roadway.

 The Raffens brought a negligence and products liability suit against Ford Motor
Company ("Ford") claiming that because the 1969 Bronco had a high propensity to roll over, Ford
had a duty to either warn of this propensity or to provide rollover protection. The Raffens alleged
negligence and Dram Shop Act violations against Milton Hayes and Dorothy Combs for serving
the men excessive amounts of alcohol. A unanimous jury found none of the defendants liable; the
verdict assigned 60% responsibility to Hamilton and 40% responsibility to Raffen for Raffen's
death.



DISCUSSION AND HOLDINGS


Exclusion of Evidence

 In their first two points of error the Raffens claim that the trial court erred in
excluding evidence. The exclusion of evidence rests within the sound discretion of the trial court. 
Porter v. Nemir, 900 S.W.2d 376, 381 (Tex. App.--Austin 1995, no writ). The trial court
commits an abuse of discretion when it acts in an unreasonable or arbitrary manner, or acts
without reference to guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226
(Tex. 1991). The exclusion of evidence ordinarily does not constitute reversible error unless the
complaining party can show that the whole case turns on the excluded evidence. Porter, 900
S.W.2d at 381. Further, there is no reversible error if the evidence in question is cumulative and
not controlling on a material issue dispositive of the case. New Braunfels Factory Outlet v. IHOP
Realty Corp., 872 S.W.2d 303, 310 (Tex. App.--Austin 1994, no writ).

 The Raffens first complain of the trial court's excluding evidence of twenty-seven
other lawsuits against Ford based on rollover accidents involving Ford vehicles. The Raffens
claim that these lawsuits were probative of Ford's knowledge of the danger of a Bronco with no
rollover protection. See Jobe v. Penske Truck Leasing Corp., 882 S.W.2d 447, 450 (Tex.
App.--Dallas 1994, no writ) (marketing defect exists when defendant knows or should know of
potential risk of harm presented by a product but markets it without adequately warning of
danger). They contend that, because the accidents alleged in the lawsuits were substantially
similar to this one, the evidence should have been admitted. See Missouri-K.-T.R. Co. v. May,
600 S.W.2d 755, 756 (Tex. 1980) (evidence of earlier accidents occurring under reasonably
similar circumstances admissible); Firestone Tire & Rubber Co. v. Battle, 745 S.W.2d 909, 912
(Tex. App.--Houston [1st Dist.] 1988, writ denied) (evidence of prior accident admissible to prove
manufacturer knew dangerous condition of product and to determine adequacy of warning).

 Although the Raffens correctly observe that evidence of prior accidents could be
probative of Ford's knowledge, they incorrectly equate allegations in prior lawsuits with evidence
of such accidents. Allegations made in prior petitions are inadmissible hearsay unless admissible
as an exception to the hearsay rule. Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d
331, 337 (Tex. 1963); Jacobson v. Kingsberry, 398 S.W.2d 584, 591 (Tex. Civ. App.--Austin
1966, writ ref'd n.r.e.); Joplin v. Meadows, 623 S.W.2d 442, 444 (Tex. Civ. App.--Texarkana
1981, no writ). The allegations of prior accidents in the lawsuits the Raffens proffered were
inadmissible hearsay. Thus, the evidence of these lawsuits had no bearing on Ford's knowledge
of prior accidents, but instead would be probative only as to Ford's knowledge that it had been
sued twenty-seven times. Such evidence had questionable relevance to any issue in the lawsuit
and the trial court did not abuse its discretion in excluding it. See Tex. R. Civ. Evid. 402. We
overrule appellant's first point of error.

 In their second point of error the Raffens assert that the trial court erroneously
excluded a transcript of an April 1971 meeting among President Nixon, Henry Ford II, John
Ehrlichman, Lee Iacocca, who was then president of Ford, and other persons identified as
"unknown." Discussions at this meeting concerned the cost of federal regulation of automobile
safety generally and its potential damage to the competitiveness of American car manufacturers. 
The conversation specifically, although briefly, dealt with bumpers, airbags, passive restraints,
collapsible steering columns and seatbelt lights; rollover protection was never discussed. The
Raffens sought to use this evidence to rebut Ford's claim that its primary concern was safety by
showing that Ford was bent on derailing safety standards. They claim that the conversation was
probative of Ford's malice and therefore relevant to the issue of punitive damages.

 While evidence of this discussion may be probative of the participants' general
attitude about federal safety regulation policies, it did not at all concern the safety of the 1969
Bronco. Even the brief mention of specific safety measures did not implicate safety matters
involved in this accident. The evidence therefore had no relevance to the Raffens' claims
concerning the safety of the 1969 Bronco. To the extent the Raffens claim that the meeting was
probative of Ford's malice and general attitude about safety, which contributed to the unsafe
design of the Bronco, this constitutes inadmissible character evidence. See Tex. R. Civ. Evid.
404(b). Moreover, the Raffens cannot claim prejudice by the exclusion of evidence relevant to
punitive damages because they do not challenge the jury's findings that Ford was not negligent
and therefore was not subject to assessment of punitive damages. See Wilson v. Texas Parks &
Wildlife Dep't, 853 S.W.2d 825, 832 (Tex. App.--Austin 1993), rev'd on other grounds, 886
S.W.2d 259 (Tex. 1994) (unchallenged jury findings binding on appeal). We hold that the trial
court acted within its discretion in excluding evidence of this meeting, and overrule the second
point of error.

 The Raffens assert in their third point of error that the trial court erred by excluding
evidence of a business card from The Shanty found on Mark Hamilton's body. Hayes and Combs
objected to the card's admission on the grounds that the Raffens had failed to identify it in
response to an interrogatory which sought identification of all documents connecting Hamilton and
Raffen to The Shanty that evening. See Tex. R. Civ. P. 215(5). The trial court sustained the
objection. The Raffens later asked the court to reconsider its ruling on the basis that the card was
identified in an insurance claims investigator report. This report was included in the investigator's
written questions deposition, which was available to Hayes and Combs. The trial court denied
the request to reconsider.

 The Raffens attack the trial court's ruling on appeal with this same contention,
claiming that they should not have been penalized for the discovery violation because Hayes and
Combs had presumptive notice of the card's existence. Alternatively, they assert that no
discovery violation occurred at all, because they identified the card by referring Hayes and Combs
to "all documents and material evidence obtained" during the accident investigation. The trial
court could reasonably conclude that this all-encompassing reference in the Raffens' answer did
not provide a satisfactory response to the interrogatory. Indeed, the very benefit in submitting
this type of interrogatory is to avoid the cumbersome task of sifting through all the documents to
find the ones pertinent to a particular issue. For this same reason we reject the Raffens'
contention that because the claim investigator's deposition referenced the card the discovery
penalty was inappropriate. See Sharp v. Broadway Nat'l Bank, 784 S.W.2d 669, 671 (Tex. 1990)
(lack of surprise does not satisfy good cause exception to discovery violation). 

 Finally we note the minimal probative value of this evidence. Darrel Peck's
testimony about his phone conversation with Thomas Raffen provided strong evidence that the
young men were at The Shanty the evening before the wreck. Phone records corroborated this
testimony. Admission of the business card would have merely provided additional, and arguably
weaker, evidence on this same issue. See New Braunfels Factory Outlet, 872 S.W.2d at 310. We
hold that the trial court acted within its discretion in excluding evidence of the business card, and
overrule appellant's third point of error.



Discovery Rulings

 In their fifth and sixth points of error the Raffens claim that the trial court erred
by allowing Combs to verify her interrogatory responses midway through trial. Although Combs
supplied answers prior to trial, the Raffens contend that the court should have struck them because
they were not verified. See Tex. R. Civ. P. 168(5). They further claim that the trial court erred
in allowing Combs to present evidence pertaining to the information sought in the interrogatories. 
See Tex. R. Civ. P. 215(5). At a pretrial hearing, Combs's counsel explained that Combs lived
out in the country, that the closest notary was sick, and that the only available notary lived fifty
miles away. Counsel assured the court that Combs would verify the answers as soon as a notary
could come to her house. (1) 

 Rule 215(5) of the Texas Rules of Civil Procedure states:



A party who fails to respond to or supplement his response to a request for
discovery shall not be entitled to present evidence which the party was under a
duty to provide in a response or supplemental response . . . unless the trial court
finds that good cause sufficient to require admission exists. The burden of
establishing good cause is upon the party offering the evidence and good cause
must be shown in the record.



The determination of good cause is committed to the discretion of the trial court. Alvarado v.
Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992). "The good cause exception permits a trial
court to excuse a failure to comply with discovery in difficult or impossible circumstances." Id. 
The trial court apparently determined that Combs's logistical difficulty in securing a notary's
services established good cause for failing to verify the answers. We hold that the trial court
acted within its discretion in reaching this conclusion, and therefore overrule the Raffens' fifth
and sixth points of error. 

 The Raffens assert in their seventh point of error that the trial court erred in
refusing to deem an admission as fact against Hayes. Ford served Hayes with a request for
admissions, including the admission that "on the night of May 20, 1991 and/or during the morning
of May 21 prior to 3:30 a.m., Thomas Dugan Raffen was a customer at `The Shanty' where he
was served alcoholic beverages." The Raffens urge that because Hayes failed to respond to Ford's
request within the normal thirty-day time limit prescribed by Civil Procedure Rule 169, this
admission should have been deemed against Hayes. 

 Texas Rule of Civil Procedure 169 provides that a matter in a request for
admissions is admitted if the recipient of the request fails to respond within thirty days, or within
a time otherwise agreed to by the parties. Tex. R. Civ. P. 169(1). Hayes contends that because
he and Ford agreed to extend the time for responding to the request, and because he responded
within this agreed time, rule 169 does not operate to deem the admission against him. The
Raffens counter that any such agreement is of no effect because it was not made in writing. See
Tex. R. Civ. P. 11 (unwritten agreements between attorneys regarding pending suit generally will
not be enforced). Hayes responds to this assertion by also invoking Rule 11, claiming that the
agreement was enforceable because he attested to it in open court. See id. (agreement made in
open court and entered of record enforceable).

 Supreme court authority instructs that an agreement which fails to comply with
Rule 11 will not be enforceable once the existence of such an agreement becomes disputed. 
London Mkt. Cos. v. Schattman, 811 S.W.2d 550, 552 (Tex. 1991). Counsel for Hayes
represented to the court on record that Ford and Hayes had agreed to an extension of time, and
that Hayes responded within that time period. Counsel for Ford, present during this exchange,
did not contest this assertion; nor did Ford at any time allege discovery violations by Hayes in this
regard. This clearly indicates that the parties never disputed the agreement's existence, and
therefore compliance with Rule 11 was not required for the agreement to be effective. In light
of this agreement no discovery violation occurred, and deeming the admission against Hayes
would have been inappropriate. We therefore overrule point of error seven.



Sufficiency of the Evidence

 The Raffens' fourth and eighth points of error concern related issues, so we will
consider them together. In their fourth point of error the Raffens contend that the evidence was
factually insufficient to support the jury's answer to jury question three. The question reads:



Did Milton Joseph Hayes d/b/a "The Shanty" provide alcoholic beverages to
Samuel Mark Hamilton when it was apparent that Samuel Mark Hamilton was
obviously intoxicated to the extent that he presented a clear danger to himself and
others?


You are instructed that a "Provider" is a person who sells or serves an alcoholic
beverage under the authority or license or permit issued under the terms of the
TABC, or who otherwise sells an alcoholic beverage to an individual.



The jury answered this question in the negative. 

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex. 1951); see
also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); see generally William Powers, Jr.
& Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515
(1991).

 The testimony of Darrel Peck indicated that Hamilton had been at The Shanty for
an undetermined length of time the evening of May 20. Additional evidence reflected that
Hamilton and Raffen went to at least one other place after leaving The Shanty. According to Dr.
Bayardo, Thomas Raffen's autopsy revealed that he had eaten roughly two hours before he died. 
Hayes testified that according to the May 20, 1991 cash register tape, no food was sold at The
Shanty that evening. From this evidence the jury could conclude that the men went somewhere
after The Shanty where Raffen had food, and where Hamilton may have consumed alcohol. 
Furthermore, officers testified to finding beer cans and a carton of beer at the scene of the wreck,
which provided strong evidence that the men obtained and consumed alcohol after leaving The
Shanty. (2) From this evidence, the jury could reasonably conclude that Hamilton became
intoxicated from drinking alcohol obtained somewhere other than The Shanty. We accordingly
conclude that the jury's answer to question three was not against the great weight of the evidence
and overrule the Raffen's eighth point of error.

 Based on this same evidence, we reject the Raffens' contention in their fourth point
of error that the trial court erroneously submitted a jury instruction on "new and independent
cause." The instruction provided:



"NEW AND INDEPENDENT CAUSE" means the act or omission of a separate
and independent agency, not reasonably foreseeable, which destroys the causal
connection, if any, between the act or omission inquired about and the occurrence
in question, and thereby becomes the immediate cause of such occurrence. 



This instruction is proper if it finds support in any of the evidence or inferences which might be
drawn from it, and if the instruction might be of some aid or assistance to the jury in answering
the question submitted. Perez v. Weingarten Realty Investors, 881 S.W.2d 490, 496 (Tex.
App.--San Antonio 1994, writ denied). We review the court's submission of this instruction under
an abuse of discretion standard. Id. The evidence we have just recited supports the inference that
the men became intoxicated from alcohol acquired after leaving The Shanty. We therefore
conclude that ample evidence exists to support the theory of new and independent cause, and
overrule the Raffens' fourth point of error.

 In their ninth, tenth and eleventh points of error, the Raffens attack the jury's
finding that Thomas Raffen was negligent and partly responsible for his death. Specifically they
contend that the jury's negligence finding against Raffen, as well as their assignment of 40%
responsibility to Raffen for causing his own death, is based on no evidence or legally insufficient
evidence. They further assert that there is factually insufficient evidence to support the 40%
finding. In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111 S.
Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex.
L. Rev. 515 (1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65 (1974).

 Even if the Raffens obtained the relief they seek under these points of error, the
judgment would remain the same because they do not attack the failure to find Ford negligent, the
failure to find that The Shanty was liable under the Dram Shop Act, and that all the defendants
were 0% responsible for causing the death of Thomas Raffen. See Wilson, 853 S.W.2d at 832
(unassailed findings are binding on appeal). Furthermore, a reduction in Raffen's percentage
contribution to his death would not necessarily translate into an attribution of responsibility to
either defendant, because the jury could have assigned greater responsibility to Hamilton.

 In any event, we disagree with the Raffen's claim that the findings concerning
Thomas Raffen lack adequate evidentiary support. The Raffens contend that the only conceivable
basis for the jury findings at issue is the simple fact that Thomas Raffen was drunk. They cite
authority for the proposition that evidence of intoxication alone will not constitute negligence per
se. See Hughes Drilling Fluids, Inc. v. Eubanks, 729 S.W.2d 759, 760-62 (Tex. App.--Houston
[14th Dist.] 1986, writ granted), set aside pending settlement, 742 S.W.2d 275 (Tex. 1987); see
also Zamarron v. Adame, 864 S.W.2d 173, 177 (Tex. App.--El Paso 1993, writ denied) (evidence
of intoxication alone will not establish proximate cause). Raffen's intoxication does not, however,
create an absolute shield precluding a negligence finding against him. As the Eubanks court
implicitly observed, where there is proof of negligent conduct in addition to the conduct of driving
while intoxicated, there is sufficient evidence to support a negligence finding. Eubanks, 729
S.W.2d at 761-762. Similarly, the Zamarron court stated that it "is inequitable to find a drunken
party liable where no act on his part contributed to" the injury. Zamarron, 864 S.W.2d at 177
(emphasis added).

 We disagree with the Raffens' allegation that the jury could only have based its
findings against Raffen on the fact that he was intoxicated. The jury could conclude that Raffen
knew or should have known of the danger inherent in both men becoming drunk when one would
have to drive home. Raffen's decision to allow these dangerous circumstances to arise, and his
later decision to put his safety in the hands of a severely intoxicated driver, (3) could each support
the finding of negligence and the assignment of 40% responsibility for causing his own death. 
Indeed, this Court has held that a passenger's own intoxication is no excuse for failing to
recognize the driver's intoxication. Mooneyhan v. Benedict, 284 S.W.2d 741, 744 (Tex. Civ.
App.--Austin 1955, writ ref'd n.r.e.). For these reasons we reject the Raffens' assertion that the
jury findings against Thomas Raffen lack legal or factual evidentiary support. Accordingly we
overrule points of error nine, ten and eleven.



CONCLUSION


 Having overruled all of the Raffens' points of error, we affirm the judgment of the
trial court.



 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: May 15, 1996

Do Not Publish

1.   Combs testified that she was recovering from surgery during the time leading up to
the trial.
2.   The evidence showed that The Shanty did not sell beer to go.
3.   The evidence revealed that the Texas Alcoholic Beverage Commission had certified
Raffen's completion of an Alcohol Server Training Course. The course includes training
on recognizing signs of intoxication.

cert. denied
, 111 S.
Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex.
L. Rev. 515 (1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65 (1974).

 Even if the Raffens obtained the relief they seek under these points of error, the
judgm